## UNITED NORTH & SOUTH DEVELOPMENT CO. v. RAYNER.

### No. 10038.

Circuit Court of Appeals, Fifth Circuit.

Dec. 29, 1941.

Rehearing Denied Feb. 2, 1942.

Ike D. White and H. Grady Chandler, both of Austin, Tex., for appellant.

J. D. Williamson, of Waco, Tex., and John W. Stayton, of Austin, Tex., for appellee.

Before HUTCHESON and McCORD, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge.

Appellant, defendant below, appeals from a judgment for the sum of $94,257.45, found by the court below to be the value at $8.05 a share of 11,709 shares of its capital stock, which it had refused to transfer on the demand of the holder appellee, plaintiff below. The basis of this judgment was that the refusal under the circumstances shown by this record amounted to a conversion. The parties will be referred to as they stood in the lower court.

On March 24, 1934, one Edgar B. Davis, who owned a large majority of defendant's stock, pledged to the plaintiff, under blank endorsement, 11,709 of his shares to secure an alleged indebtedness represented by five promissory notes aggregating $234,176.13. Davis having failed to pay the notes for several years after maturity, plaintiff acting under the terms of the pledge, advertised for sale and bid the stock at public auction for $1 per share. Shortly thereafter, on October 21, 1940, they were tendered to the company for transfer to the name of Rayner which was refused for reasons appearing below. This suit for conversion followed in which the sole demand is for damages for the alleged value of the stock.

The defense was, in substance, that the transfer had been refused because of a controversy between Davis and plaintiff

over the ownership of the stock, and because of the pendency of a garnishment proceeding in the State court, in which the State of Massachusetts sought to seize Davis' interest in the stock. The jury was waived.

The sole question is as to whether or not probable cause existed to justify the refusal of the transfer. The trial Judge concluded that inasmuch as Davis owned a major part of the stock, he controlled and dictated the action of appellant's officers in refusing the transfer and that there was no reasonable basis for this refusal.

The opinion appears to have been dictated from the bench at the conclusion of the evidence. In the course of his remarks, the lower Judge said: "The evidence would further indicate that the Company had long been apprised of the arrangement between Davis, Rayner, and Mowinckle, and other associates, out of which these notes which Rayner held grew, and that they were well aware of the fact that Davis had long since pledged these shares of stock to Rayner and that he held them as pledgee. They had twice in garnishment suits reported such fact under oath. Matters were actively handled for the Company, so far as Davis did not handle and dominate them, by Ainsworth, whom, the evidence would show, was thoroughly familiar with what had been done and had on prior occasion attempted to adjust the matter of Rayner's claim for the purpose of getting it straightened out on Davis' behalf."

One Ainsworth was the Vice-President and Treasurer of this Company, charged with the responsibility of deciding whether or not the demand for transfer should be complied with, and the lower court's statement thus indicates that there had been a controversy between plaintiff and Davis with respect to the pledging of this stock. The fact that he or other officers of the Company had answered or admitted in garnishment proceedings that the stock was pledged to Rayner did not make them the Judges of the validity of such a pledge. They were bound to state the facts as they appeared in response to interrogatories and refer it to the court from which the writ had issued to decide the question of the effectiveness of the pledge. Without going into detail, briefly, the circumstances out of which this relation grew, were that Davis, after very successful oil operations formulated a scheme by which his associates should share in the profits. After

the failure of a second undertaking in the oil business, he gave notes in large figures which were not paid and finally shares of his stock were pledged to secure them. Later, when these obligations could not be paid, a controversy as to whether they were donations or had any consideration were raised, which may or may not in a proper proceeding have merit. Davis appeared at the sale which the plaintiff had advertised, and offered the stock, and warned those present of the trouble, advising them that anyone who took the stock would face litigation. This appears to be the reason why there were no other bids and Rayner paid only $1 per share for the same stock which the lower court in this case a few months later found was worth $8.05 per share. It may be found as a matter of fact and law, after proper hearing, that Davis was responsible for the "chilling of bids" and the fact that he would receive a credit of only $11,709 on his notes of $234,000, if unsuccessful in his controversy with plaintiff, thus making it possible for a deficiency judgment to be rendered against him for the balance. This created a legal situation which the officers of defendant were not qualified to decide.

The officers of the appellant acted upon the advice of reputable counsel, and it cannot be said that they were arbitrary or that the right of plaintiff to have the transfer was free from doubt.

Again, there is the matter of the writ of garnishment, and while it had been quashed by the trial court and appealed without supersedeas, a reversal might lead to litigation in which the corporation would be involved. Ainsworth or other officers of the Company could not be expected to decide these technical legal issues and they were entitled to rely on the advice counsel gave in good faith. The effect of the judgment appealed from is to change the status from that of stockholder to a creditor, with the right to participate with other creditors in event of the liquidation or insolvency of the corporation. This should not be done except in a very clear case. 18 C.J.S. 1049, Verbo Corporations § 435; Shear v. Wilson, Tex.Com.App., 292 S.W. 531; Bayard v. Farmers' & Mechanics' Bank, 52 Pa. 232, 235; Spangenberg v. Nesbitt, 22 Cal. App. 274, 134 P. 343; Howe v. Roberts, 209 Ala. 80, 95 So. 344.

It is our view that the appellee should be relegated to either a mandamus, an injunction, a suit for specific performance or

other proceeding, in which the title to the stock can be determined.

The judgment appealed from is reversed.