EARTHMAN'S, INC., et al., Appellants,

v.

Dorothy EARTHMAN, Appellee.

No. 16398.

Court of Civil Appeals of Texas, Houston (1st Dist.).

July 10, 1975.

Rehearing Denied Aug. 18, 1975.

Kronzer, Abraham & Watkins, W. James Kronzer, Miriam M. Burke, Rockne Onstad, Houston, for appellants.

Butler, Binion, Rice, Cook & Knapp, Tom Alexander, Stephen W. Hanks, Houston, for appellee.

EVANS, Justice.

This case with all its facets is essentially a suit to recover damages for conversion of

corporate stock. After a jury trial, Mrs. Earthman, the plaintiff, recovered judgment on the verdict against her former husband, J. B. Earthman, III, his brother, Robert Earthman, his father J. B. Earthman, and three Earthman family corporations: Earthman's, Inc., Mission Life Insurance Company, and Resthaven Memorial Gardens, Inc. She was awarded damages of $325,000.00 for the conversion of her shares of Earthman's, Inc. stock; $110,-700.00 for her Mission Life Insurance Company stock, and $211,000.00 for her Resthaven Memorial Gardens, Inc. stock. She was also awarded exemplary damages which, in sum total, were in amounts which equalled the respective awards of actual damages for conversion of her stock.

We are presented with 317 points of error and one cross-point. For the purpose of continuity, we shall group and discuss the points in substantially the same manner as presented in the briefs of the parties.

Mrs. Earthman was divorced from her husband, J. B. Earthman, III, in March 1971. Under the divorce decree, Mrs. Earthman was awarded:

"65% of the total stock owned by the parties, or either of them, with James Bradshaw Earthman, III, ordered to forthwith transfer to Dorothy Monroe Earthman the following shares:

"(1) 1300 shares of Earthman's, Inc.;

"(2) 10,833 shares of Resthaven Memorial Gardens, Inc.;

"(3) 325 shares of Mission Life Insurance Company."

The shares so awarded to Mrs. Earthman represented 21% ownership in Earthman's, Inc., 21% in Resthaven, and 13% in Mission. There seems to be no question but that the three corporations were closely held and were owned and controlled by J. B. Earthman and his sons, J. B. Earthman, III, Robert Earthman, and Michael Earthman.

Subsequent to the entry of the divorce decree, Mrs. Earthman and her attorneys sought to have the stock which had been awarded to her transferred into her name on the corporate records of the three corporations. As the result of these efforts, the attorney for the Earthman defendants wrote to Mrs. Earthman's attorney and advised that before any stock could be transferred as requested, the stock certificates with appropriate stock powers executed by J. B. Earthman, III would have to be presented to the respective corporations. In this letter, which is dated July 22, 1971, the Earthmans' attorney advised that two stock certificates, one representing 1400 shares of Earthman's, Inc. and the other 250 shares of Mission, were being held by J. B. Earthman as security for a debt owed by his son, J. B. Earthman, III and that those certificates would not be released until the debt had been paid. The Earthmans' attorney further advised that the remaining stock in Mission and Resthaven would be transferred when certificates were properly presented to the corporations. Finally, in this letter the Earthmans' attorney stated that the remaining 600 shares of Earthman's, Inc. could not be transferred even if appropriate request were made because Earthman's, Inc. or its stockholders intended to exercise an option to purchase the stock under a provision of the company's articles of incorporation.

Apparently as an outgrowth of this letter, Mrs. Earthman filed this suit on August 12, 1971. In her original petition, Mrs. Earthman alleged that the three corporations had refused to transfer to her name the stock which had been awarded to her under the decree, as evidenced by the letter of July 22, 1971, and asked that the court declare her rights and order the proper stock certificates delivered to her. In her petition, she asserted that J. B. Earthman, III should be required to deliver to the corporation such certificates as he might have in his possession so that they might be cancelled or, if lost, that he should be required to take appropriate measures to have this declared so that new certificates might be issued; that as to the certificates which were assertedly the subject of a debt owed

by J. B. Earthman, III to his father, J. B. Earthman, that the rights of both of the parties be declared in accordance with the provisions of the divorce decree and that the rights of the parties also be determined with respect to the assertion that Earthman's, Inc. or its stockholders had an option to purchase Mrs. Earthman's stock under the articles of incorporation of that corporation. Mrs. Earthman also sought, as a derivative stockholder right, the return of various items of value which she asserted had been transferred from the corporations, without consideration, to or for the benefit of individual members of the Earthman family.

After this suit was filed, a hearing was held on November 22, 1971, in the Court of Domestic Relations which had entered the divorce decree, on certain motions for contempt filed by Mrs. Earthman against J. B. Earthman, III. Pursuant to the order of the court on such hearing, signed December 15, 1971, the following corporate certificates and assignments were tendered into the registry of the court:

1. Earthman's, Inc. stock certificate no. 24 for 700 shares executed in blank by J. B. Earthman, III;

2. Assignment executed in blank by J. B. Earthman, III covering Earthman's, Inc. stock certificate no. 2 for 600 shares;

3. Mission Life Insurance Company stock certificate for 250 shares executed by J. B. Earthman, III transferring 162 shares to Mrs. Earthman and 88 shares to Michael Earthman;

4. Mission Life Insurance Company stock certificate no. 24 executed by J. B. Earthman, III in blank covering 163 shares.

The order directed that the necessary instruments to secure the issuance of certificates in lieu of lost certificates for Resthaven Memorial Gardens stock were to be executed so that upon tender of such instruments certificates might be issued to Mrs. Earthman for 9208 shares and another certificate to her attorneys for 1625 shares.

The order recited that Mission and J. B. Earthman had waived any lien that they might have with respect to the Mission stock certificates and that Mission had agreed, subject to compliance with the provisions of any applicable statutes or regulations, to reissue the Mission stock certificates as follows: 88 shares to Michael Earthman, 48.75 shares to Mrs. Earthman's attorneys, and 276.25 shares to Mrs. Earthman.

The court's order further directed that the two certificates representing 1300 shares of Earthman's, Inc. were to be held in the registry of the court pending its further order and that the remaining 700 shares in the hands of J. B. Earthman, III were to be held subject to the debt to J. B. Earthman. It provided that J. B. Earthman, III was enjoined from selling, mortgaging, hypothecating or disposing of these shares without using the entire proceeds of such sale to retire such indebtedness. The order recited that the division of the stock certificates of Mission and Resthaven, as set out in the divorce decree, reflected the 15% contingent fee contract of Mrs. Earthman's attorneys, which had been found reasonable and approved by the court, and ordered that the certificates tendered into the registry of the court be distributed under that contract: 85% to Mrs. Earthman, and 15% to her attorneys.

The order was approved as to form by the attorneys for Mrs. Earthman, J. B. Earthman, III, Mission Life Insurance Company and J. B. Earthman, Jr. It does not appear that the latter two parties had been made nominal parties to the proceedings.

On March 13, 1972, pursuant to an agreed motion filed with the divorce court on behalf of Mrs. Earthman and J. B. Earthman, III, an order was entered in the divorce court releasing the stock certificates which had been so tendered into the court's registry. The certificates were then delivered by the court to the attorney for the Earth-

man corporations and according to Mrs. Earthman's testimony, this was done for the purpose of completing transfer of the stock to her in accordance with the court's decree. Mrs. Earthman testified that in agreeing to the release of such stock, she relied upon the representation of this attorney and of her former husband, J. B. Earthman, III that the stock would be transferred to her. She further testified that her husband, J. B. Earthman, III subsequently advised her that "they" were not going to transfer the stock to her.

On March 13, 1972, the date the stock was released from the court's registry, Mrs. Earthman's attorney wrote to the Earthmans' attorney, referring to the court's order of the same date, and enclosing a lost stock affidavit covering one of the Resthaven stock certificates. In this letter, Mrs. Earthman's attorney requested delivery of appropriate stock certificates reflecting her ownership of 1300 shares of Earthman's, Inc., 10,835 shares of Resthaven Memorial Gardens, and 325 shares of Mission. He acknowledged the provision in the order of November 22, 1971, that 700 shares of Earthman's, Inc. were to be held and retained as security for the debt of J. B. Earthman, III to J. B. Earthman. The letter concluded with a statement to the effect that should the lost stock affidavit be considered insufficient with respect to the Resthaven stock, all other stock should be delivered forthwith and the Resthaven matter should be resolved "as soon as possible".

By letter dated April 5, 1972 the Earthmans' attorney advised Mrs. Earthman's attorney that Earthman's, Inc. was exercising an option to purchase the Earthman's stock under Article V of its articles of incorporation and that it therefore refused her request to transfer such stock to her. He further advised that Mission was willing to transfer the shares of Mission stock to Mrs. Earthman upon evidence of compliance by her with the provisions of the Texas Insurance Code and other applicable statutes but that it appeared "such provisions of law have not yet been satisfied." He then ad-

vised that the affidavit of loss with respect to the Resthaven certificate was satisfactory but that the corporation had also required a $1,000 lost instrument bond which had not yet been furnished. After making these statements the Earthmans' attorney stated:

"Since Earthman's, Inc. has elected to exercise its right of purchase as to its stock which J. B. Earthman, III has now attempted to transfer to your client, it would appear that this is an appropriate time for you and your client to consider the sale of all of the stock which you will receive as a result of the divorce."

On August 28, 1973, Mrs. Earthman filed her second amended petition, in this suit, alleging that by the letter of April 5, 1972 J. B. Earthman, Resthaven, Mission and Earthman's, Inc. for themselves and also for the benefit of J. B. Earthman, III and Robert Earthman, undertook to purchase the stock awarded to her under the divorce decree and that they had wholly failed to comply with the terms of said purchase and had instead converted the stock to their own use and benefit, for which she was entitled to recover the fair market value. She alleged that the defendants had acted in a conspiracy to defraud her of her shares of stock and sought damages for the conversion as well as exemplary damages. She further alleged that the defendants had embarked upon a malicious and fraudulent course of action deliberately designed to force her to accept the sum of $200,000 for her stock, knowing such amount to be far below its value and that the defendants had conspired to harass and intimidate her to accept such amount for her interest. She also sought alternative relief in line with the allegations of her original petition.

The case was tried in January 1974 over a period of several weeks. The pertinent issues and instructions submitted to the jury and its responses are as follows:

"Conversion is the wrongful exercise of dominion and control over another's property in denial of or inconsistent with his

rights. To constitute a conversion, it is not necessary that there be a manual taking of the property in question. The unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights, is in law a conversion. A wrongful refusal by a corporation to transfer stock constitutes a conversion. Fraudulent intent or purpose is not required, and the question of good faith of the convertor is relevant only on the issue of exemplary damages.

"The term 'wrongful' as used in this instruction means that an act involved the violation or neglect of some legal duty which the person sought to be charged therewith owes to the person claiming injury at the time and place of the claimed injury. However, good faith is not a defense to the conversion action.

"When a corporation issues capital stock it must deliver to each shareholder one or more certificates representing such stock signed by the president or vice president of the corporation, and also signed by the secretary or an assistant secretary of the corporation. Transfers of ownership of shares of stock by shareholders are accomplished by the execution by the shareholder in whose name the certificate representing such shares stands of a written assignment, either upon such certificate or upon an assignment separate from such certificate, which written assignment directs the corporation to transfer shares represented by the certificate to the person or persons named in such assignment, and the delivery by the shareholder making the transfer to the person receiving the transfer of the certificate and the assignment thereof.

"A corporation is liable for wrongs committed by its officers when they are done within the scope, or apparent scope, of the officer's authority, and bound by declarations or admissions of an officer when made within his authority.

"You are instructed that the terms malice or maliciously mean the ill will, bad or evil motive, or such gross indifference to the rights of others as amounts to willful or wanton acts.

"You are instructed that corporations can only act through their employees or agents and corporations are bound by the actions of their employees or agents when such actions are performed in the course and scope of their employment or agency. The authority to perform such acts may be express or implied as long as the employee or agent is engaged in service of the corporation and in the furtherance of its business, whether on its premises or elsewhere.

"A fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by direct evidence when proven by witnesses who saw the act done or heard the words spoken or by documentary evidence. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proven."

### SPECIAL ISSUE NO. 1

"Do you find from a preponderance of the evidence that Defendants converted Dorothy Monroe Earthman's stock in Earthman's, Inc. on April 5, 1972?

"Answer 'We do' or 'We do not' for each Defendant listed. Consider this issue separately as to each Defendant listed below.

| | |
|---|---|
| "Earthman's, Inc. | we do |
| Robert Earthman | we do |
| J. B. Earthman | we do |
| J. B. Earthman, III | we do |

"If you have answered Special Issue No. 1 'We do' and only in that event, then answer:

### SPECIAL ISSUE NO. 2

"What do you find, from a preponderance of the evidence, was the fair market

value of Dorothy Monroe Earthman's stock in Earthman's, Inc. on April 5, 1972?

"The 'fair market value' of corporate stock is the price which a willing buyer would pay to a willing seller, neither being under compulsion to buy or sell, and both having full knowledge of all pertinent facts.

"Answer by stating the amount in dollars and cents.

"ANSWER: $325,000.00

## SPECIAL ISSUE NO. 3

"Do you find from a preponderance of the evidence that the Defendants converted Dorothy Monroe Earthman's stock in Mission Life Insurance Company on April 5, 1972?

"Answer 'We do' or 'We do not' for each Defendant listed. Consider this issue separately as to each Defendant listed below.

| "Mission Life Insurance Company | we do |
| --- | --- |
| Robert Earthman | we do |
| J. B. Earthman | we do |
| J. B. Earthman, III | we do |

"If you have answered Special Issue No. 3 'We do', and only in that event, then answer:

## SPECIAL ISSUE NO. 4

"What do you find, from a preponderance of the evidence, was the fair market value of Dorothy Monroe Earthman's stock in Mission Life Insurance Company on April 5, 1972?

"The 'fair market value' of corporate stock is the price which a willing buyer would pay to a willing seller, neither being under compulsion to buy or sell, and both having full knowledge of all pertinent facts.

"Answer by stating the amount in dollars and cents.

"ANSWER: $110,700.00

## SPECIAL ISSUE NO. 5

"Do you find from a preponderance of the evidence that the Defendants converted Dorothy Monroe Earthman's stock in Resthaven Memorial Gardens, Inc. on April 5, 1972?

"Answer 'We do' or 'We do not' for each Defendant listed. Consider this issue separately as to each Defendant listed below.

| "Resthaven Memorial Gardens, Inc. | we do |
| --- | --- |
| J. B. Earthman | we do |
| Robert Earthman | we do |
| J. B. Earthman, III | we do |

"If you have answered Special Issue No. 5 'We do', and only in that event, then answer:

## SPECIAL ISSUE NO. 6

"What do you find, from a preponderance of the evidence, was the fair market value of Dorothy Monroe Earthman's stock in Resthaven Memorial Gardens, Inc. on April 5, 1972?

"The 'fair market value' of corporate stock is the price which a willing buyer would pay to a willing seller, neither being under compulsion to buy or sell, and both having full knowledge of all pertinent facts.

"Answer by stating the amount in dollars and cents.

"ANSWER: $211,000.00."

The Earthman defendants first argue that Mrs. Earthman's claim of conversion is barred by the two year statute of limitations, Article 5526, Vernon's Tex.Rev.Civ. Stat.Ann. They point to the allegations in Mrs. Earthman's original petition, filed more than two years prior to the date of her second amended petition, wherein she alleged a failure and refusal on the part of the defendants to issue stock certificates evidencing her ownership in the three corporations. They assert that these allegations showed an awareness on her part that

the corporations were then refusing to honor her rights as a stockholder.

In our opinion the record does not support the contention of the Earthman defendants that Mrs. Earthman had a legal basis for asserting a conversion of her stock prior to April 5, 1972. As evidenced by the approved order entered in the divorce proceedings, the stock certificates in question were voluntarily placed in the registry of that court. Until such time as the stock certificates, with properly executed stock powers attached, were released from the registry of the court and presented for transfer to the respective corporations, Mrs. Earthman was without legal standing to require the corporations to effectuate the transfer on its books and to reissue to her stock certificates evidencing her ownership. It was not until April 5, 1972, that the corporations through their attorney assumed a legal posture with respect to the requested transfers which if taken in error, might subject the corporations to potential liability for conversion. Until that time there was not such a distinct and unequivocal refusal to effectuate such transfer as would have originated a cause of action for conversion. We hold that the trial court properly determined, as a matter of law, that the action for conversion was not barred by the two year statute of limitations. *Kent v. National Supply Co. of Tex.,* 36 S.W.2d 811 (Tex.Civ.App.—Waco 1931, writ ref'd).

The Earthman defendants next contend that there was no conversion on April 5, 1972 because they had reasonable excuse or probable cause for their actions. They point out the general rule that a corporation is not liable for damages for conversion where it refuses to issue or transfer stock, unless its refusal is without legal justification or excuse.

The legal justification for the refusal to effectuate transfer of the 1300 shares of capital stock of Earthman's, Inc. was based upon a provision of Article V of the articles of incorporation of that company which provides as follows:

"The shares of stock of the corporation are to be held by each shareholder upon the condition that he will not sell, assign, transfer, pledge or in any way dispose of or encumber any of such shares without first offering (in writing, mailed to the Corporation's office) the same for sale to the Corporation which shall have the right to purchase all or any portion of such shares within sixty (60) days from the date of the offer. . . . If for any reason the Corporation does not purchase any shares of stock which it has the right to purchase under any provision of this Article, the remaining shareholders of the Corporation so electing shall have the right to purchase all or any portion of such shares (prorata, according to their stock ownership, or as they may otherwise agree) within ten (10) days following the end of the time during which the Corporation had the right to purchase such shares under this Article. The price for purchase of shares of stock under any provision of this Article shall be the book value of such shares as at the close of the month preceding the date of the offer . . . such book value to be determined by the certified public accountants serving the Corporation at such time, in accordance with the accounting practices followed in preparing the most recent annual financial statement to the corporation. Such purchase price shall be paid in cash forthwith after notification of the election to purchase or, at the option of the purchaser, 20% of the purchase price may be so paid in cash and the balance may be paid in no more than four equal annual installments with interest at the rate of 6% per annum."

In the letter of April 5, 1972 counsel for Earthman's, Inc. stated that Earthman's, Inc. construed the delivery of the two certificates representing 1300 shares of the company stock as an attempt by J. B. Earthman, III to transfer stock to Mrs. Earthman in derogation of Article V, that the company was therefore entitled to pur-

chase such stock at book value and that it exercised its right and option to purchase such stock on terms as stated in the article.

▮ A provision which restricts a stockholder's right to sell or transfer his stock, particularly one which affords a prior right of purchase to the corporation or to another stockholder, is not looked upon with favor in the law and is strictly construed. *Casteel v. Gunning,* 402 S.W.2d 529 (Tex. Civ.App.1966, writ ref'd n. r. e.); *Gulf States Abrasive Manufacturing, Inc. v. Oertel,* 489 S.W.2d 184 (Tex.Civ.App.—Houston [1st], 1972, writ ref'd n. r. e.). It has generally been held that such a restriction is inapplicable to a transfer occurring as a result of an involuntary sale or by operation of law unless by specific provision in the restriction it is made applicable. 18 C.J.S. Corporations § 391 (1939); 2 A.L.R.2d 745, 754, Restrictions on Corporate Stock.

In *Messersmith v. Messersmith,* 229 La. 495, 86 So.2d 169 (1956), it was contended that certain community owned stock should not be divided in kind, as decreed by the divorce court, and that the husband should be permitted to retain the stock and to pay his wife one-half its book value in accordance with a restrictive clause in the corporate charter requiring a stockholder, who wished to sell his stock, to first offer it to the other stockholders or officers of the corporation. The Louisiana Supreme Court determined that the restrictive provision of the charter could not prevent the recognition of the wife's share of ownership in the corporation and held that she was entitled to have delivered to her in kind the interest awarded to her under the divorce decree. In so holding that court stated:

". . . The restriction in the charter cannot affect the status of the stock purchased during the existence of the community or the rights the wife may assert thereunder. Such a restriction cannot negative the wife's present interest as a co-owner, and as a co-owner in community she is clearly entitled to be recognized as such and obtain the exclu-

sive management and control of her vested interest. (citing cases)." (86 So.2d p. 173)

▮ We are of the opinion that the restrictive provision in question should not be construed so as to preclude Mrs. Earthman's right to have her shares of ownership reflected on the books of the corporation and to have the stock certificates evidencing her ownership issued to her. We hold that the trial court properly determined that this provision did not afford to the corporation the right or option to purchase the shares of Earthman's, Inc. so awarded to Mrs. Earthman.

In the letter of April 5, 1972 the attorney for the Earthman defendants did not indicate absolute refusal on the part of Mission Life Insurance Company and Resthaven Memorial Gardens, Inc. to transfer to Mrs. Earthman the shares of stock in those corporations awarded to her but merely deferred action on her request pending receipt of further transfer documents. We quote the two pertinent paragraphs from this letter as follows:

"Turning now to the 325 shares of Mission Life Insurance Company stock which James B. Earthman, III was directed to transfer to Dorothy Monroe Earthman by virtue of the above mentioned final decree of divorce, please be advised that Mission Life Insurance Company is ready, willing and able to transfer said shares of stock to Dorothy Monroe Earthman upon evidence of compliance by her with the provisions of the Texas Insurance Code and other statutes applicable to insurance company stock. It would appear that all of such provisions of law have not yet been satisfied, and we are therefore holding in abeyance your request for transfer of the shares pending such compliance.

"This brings us finally to the matter of 10,833 shares of capital stock of Resthaven Memorial Gardens, Inc., which James B. Earthman, III was directed, in the above mentioned decree of divorce, to transfer to Dorothy Monroe Earthman.

The records of Resthaven Memorial Gardens, Inc. reflect that as at this date James B. Earthman, III is the owner of 16,666 shares of its capital stock, represented by certificate No. 114. The affidavits you have submitted are acceptable as satisfactory proof that said certificate No. 114 has been lost; however, you will recall that as counsel to the Corporation we had indicated a requirement for a $1,000.00 lost instrument bond, which bond has not yet been furnished. It would appear to me that J. B. Earthman, III and Dorothy Monroe Earthman should be co-principals on such bond, and I am certain that you will have no difficulty in obtaining it and furnishing it to us, at which time we will effect the reissue of substitute certificates in the respective numbers of shares you have requested."

■ As to Mission Life Insurance Company stock the Earthman defendants contend that Article 21.49–1 of the Texas Insurance Code, V.A.T.S., constituted a possible impediment to the transfer of that stock, particularly as to that portion which was to be ultimately transferred to Mrs. Earthman's attorney under their contingent fee agreement. The Earthmans' attorney testified he looked at all the corporate records of Mission and found no restrictions on the transfer of the stock and had advised the corporate officers that it should be transferred on proper presentation of the certificates. The stock was in fact transferred on the books of the corporation into Mrs. Earthman's name three or four days prior to the first day of trial. The trial court refused to permit the jury to hear the contents of the statute or to receive testimony concerning its content. We perceive no provision in Article 21.49–1 of the Texas Insurance Code which would prevent the transfer to Mrs. Earthman of her shares of stock as determined by the divorce decree and this is all that was requested by her attorney in his letter of March 13, 1972. Under the circumstances we believe the trial court properly determined that the stat-

ute did not constitute a legal justification for refusal to transfer Mrs. Earthman's shares in Mission Life Insurance Company to her and we cannot say the court erred in its refusal to permit the jury to know the contents of the statute.

■ Under the nature of the request made by Mrs. Earthman's attorney for the transfer of the Resthaven stock, we believe the trial court erred in refusing to determine, as a matter of law, that the response of the Earthman defendants contained in the letter of April 5, 1972 constituted legal justification for its action in requiring a lost instrument bond in addition to the documents previously furnished. The letter of request written by Mrs. Earthman's attorney dated March 13, 1972 recognized the possibility that the lost stock affidavit might not be sufficient to permit the transfer of such stock and asked only that the matter be resolved as soon as possible. Upon the evidence before us we hold that this request could not be considered such an unequivocal demand for transfer as would constitute a legal basis for an action for conversion. It, therefore, becomes unnecessary for us to consider the further contention of the Resthaven defendants that the tender and acceptance of the Resthaven stock by Mrs. Earthman's attorney in December 1972 precluded her recovering other than special or nominal damages.

The Earthman defendants next contend that Mrs. Earthman's recovery should be limited to her special damages, arguing that there was only a potential conversion of her stock certificates as distinguished from her stock interest. They contend that neither the letter of April 5, 1972 nor other conduct on their part deprived Mrs. Earthman of her beneficial stock ownership. In related argument, they contend that the trial court erred in instructing the jury that the question of their good faith was relevant only as to the issue of exemplary damages and in refusing to give appropriate instructions with reference to a transfer agent's duties.

A refusal of a corporation to transfer record ownership of corporate stock may, under appropriate circumstances, result in liability of the corporation for damages as a conversion of the stock. *Prudential Petroleum Corp. v. Rauscher Pierce & Co.,* 281 S.W.2d 457, 461 (Tex.Civ.App.—Dallas, 1955, writ ref'd n. r. e.); *Bower v. Yellow Cab Co.,* 13 S.W.2d 708 (Tex.Civ.App.—El Paso, 1929, writ ref'd). In *Powell v. Forest Oil Corporation,* 392 S.W.2d 549 (Tex.Civ.App.—Texarkana, 1965, no writ), the general rule is stated as follows:

"To constitute conversion, there must be an intent on the part of the defendant to assert some right in the property. Wrongful intention is not essential, however; nor is it material, except as to the question of damages, that the defendant acted in good faith or under a mistaken belief as to his rights. 14 Tex.Jur.2d, Sec. 3, p. 11."

If under the circumstances existing at the time of the letter of April 5, 1972 there was no legal justification for the refusal of the Earthman corporations to immediately effectuate the transfer of Mrs. Earthman's shares to her, the fact that they may have relied upon advice of counsel or that they innocently believed their actions to be justified, would not constitute a legal defense to an action for conversion. *Kolp v. Prewitt,* 9 S.W.2d 490 (Tex.Civ.App.—Fort Worth, 1928, no writ); *White-Sellie's Jewelry Co. v. The Goodyear Tire & Rubber Co.,* 477 S.W.2d 658, 662 (Tex.Civ.App.—Houston [14th], 1972, no writ).

There are, however, circumstances in this case bearing upon the motives of the Earthman defendants which could properly have been considered by the jury in deciding the issues of liability and damages. The beneficial ownership of Mrs. Earthman in the three corporations was never denied by the Earthman defendants, who at all times conceded her ownership of the stock, subject to the claims and requirements asserted in their attorney's letter of April 5, 1972. While an absolute refusal to transfer possession of property to one entitled thereto has been held to constitute a conversion, a qualified refusal based upon a reasonable qualification or requirement has been said not to constitute a conversion per se, provided that such refusal is made in good faith. 18 Am.Jur.2d, Conversion, Sec. 44, pp. 184–185.

"Where the refusal is not absolute, but is qualified by certain conditions which are reasonable and justifiable, and which are imposed in good faith, and in recognition of the rights of plaintiff, it will not serve as a sufficient basis for an action for conversion. The conditions, however, must have a legal foundation, or rest on a reasonable doubt as to the validity of plaintiff's claim, or be based on a reasonable doubt as to defendant's duty under the circumstances. Where the qualified or conditional refusal is not reasonable or justifiable under the circumstances, and amounts to a denial of plaintiff's rights in the property, it will be sufficient to sustain an action for conversion, and it is for the jury, under proper instructions from the court, to pass on the existence of the qualification and its reasonableness . . ." 89 C.J.S. Trover & Conversion § 59b, pp. 564–565.

In *United North & South Development Co. v. Rayner,* 124 F.2d 512, 513 (5th Cir. 1942, cert. den. 316 U.S. 665, 62 S.Ct. 945, 86 L.Ed. 1741 (1942), a case heavily relied upon by the Earthman defendants, the evidence established that the corporation had refused, on advice of counsel, to transfer certain stock to the plaintiff because of an existing controversy as to its ownership and because of the pendency of guardianship proceedings which might have changed the status of the stockholder to that of a creditor. The question on appeal was whether or not probable cause had existed to justify the refusal of the transfer, the trial court having concluded that one of the claimants to the stock, who owned a major part of the company's stock, had controlled the actions of the corporate officers in refusing the

transfer and that there was no reasonable basis for the company's refusal. The Fifth Circuit Court of Appeals, in reversing the trial court's judgment, stated their view that the plaintiff should be relegated to a mandamus, an injunction, a suit for specific performance or other proceeding in which the title to the stock could be determined, and held:

"The officers of the appellant acted upon the advice of reputable counsel, and it cannot be said that they were arbitrary or that the right of plaintiff to have the transfer was free from doubt."

In the present case Mrs. Earthman's original action for declaratory judgment made reference to the letter of the attorney for the Earthman defendants dated July 22, 1971 and asked that the parties' rights with respect to the matters therein asserted be judicially determined and declared. The issues having been joined as to the legal determination of the parties' respective rights and duties as to the shares of stock beneficially owned by Mrs. Earthman, the question of whether the Earthman corporations subsequently acted arbitrarily and without reasonable grounds in refusing to transfer the stock as requested became a vital inquiry in the case. Had, for example, Earthman's, Inc. initiated a bill of interpleader and placed the Earthman's, Inc. stock in the registry of the court pending judicial determination of the legal effect of the restrictive provision in the articles of incorporation, it could hardly be said that its subsequent refusal to complete the transfer on its books, pending such determination, would have constituted a conversion authorizing recovery of the full market value of the stock. *Smith v. Texas & N. O. R. Co.*, 101 Tex. 405, 108 S.W. 819, 821 (1908). The action for declaratory relief was brought by Mrs. Earthman for the purpose of having her rights with respect to this stock determined and declared. Whether, after the filing of this action and during its pendency the Earthman defendants acted arbitrarily and without reasonable basis in refusing the requested transfer is a ques-

tion requiring a factual consideration of the entire relationship between the parties. There was evidence tending to show that after the stock was released from the registry of the court, a meeting was held between J. B. Earthman and his sons, Michael, Robert and J. B. Earthman, III. Mrs. Earthman testified that her former husband, J. B. Earthman, III, told her that it had been decided at such meeting that her stock was worth $200,000.00 and that that was the amount she was to be offered for it. She testified that she was also told she would never be paid a salary or a dividend on her stock and that if she didn't take the offer, false charges would be trumped up against her. This testimony was relevant and material to the jury's determination of whether Earthman's, Inc. was guilty of conversion in refusing to transfer the stock as requested. Whether or not Earthman's, Inc., acted in good faith and upon reasonable grounds under the circumstances existing at the time of the letter of April 5, 1972, was an appropriate consideration for the jury.

In similar vein the jury was called upon to determine whether Mission Life Insurance Company acted in good faith and upon reasonable grounds in requiring compliance with appropriate statutes and laws as stated in the letter of April 5, 1972. This determination required the jury to consider not only the legal relationship of the parties but as well the entire set of circumstances affecting their relationship at the time of the letter of April 5, 1972.

The trial court's charge erroneously instructed the jury that the question of good faith was relevant only on the issue of exemplary damages and that good faith was not a defense to the conversion action. The trial court also erred in refusing the requested instruction that a corporation might delay transfer for a reasonable period of time in order to ascertain whether the transfer was authorized or whether it would result in some violation of a law,

by-law or of its articles of incorporation. A refusal to deliver property on request may be justified in order to secure reasonable time to investigate the rights of the parties and in an appropriate case, no conversion results if such is made in a good faith effort to resolve a doubtful matter. *Sandford v. Wilson*, 2 Willson, Civ. Cases Ct. of App., §§ 247–250; *Roberts v. Yarboro*, 41 Tex. 449 (1874). An examination of the record in its entirety, including the argument of counsel, leads us to the conclusion that the court's charge probably resulted in erroneous and improper deliberations of the jury with respect to the basic issues of whether there had been an unjustifiable detention of Mrs. Earthman's stock and of the damages, if any, to which she was entitled. We, therefore, must order the judgment reversed and remanded for new trial. McDonald, Texas Civil Practice, Vol. 3, Sec. 12.37.3, pp. 449–450. In so holding we express no opinion as to the points of error attacking the legal and factual sufficiency of the evidence to support the jury's findings on these issues.

In view of the necessity of another trial, we believe it appropriate to express our views with respect to certain other matters raised upon this appeal.

■ The Earthman defendants object to the court's charge on the issues of conversion as being duplicitous and an improper submission as to the vicarious liability of each of the individual defendants. Since we have determined the case must be reversed and remanded it is unnecessary that we determine whether such complaint has been properly preserved. While we do not necessarily approve the form of the charge as submitted, we point out that where corporate directors and officers actively participate in the conversion of another's property by instigating, aiding or abetting the corporation, they may be held liable as joint tortfeasors with the corporation. *Bower v. Yellow Cab Co.*, 13 S.W.2d 708, 710 (Tex.Civ.App.—El Paso, 1929, writ ref'd). An officer who actively participates with the corporation in the conversion may be held personally responsible, not solely by reason of his corporate office, but because of his active participation in the tortious act. *Lone Star Mining Co. v. Texeramics, Inc.*, 363 S.W.2d 868 (Tex.Civ.App.—Eastland, 1962, writ ref'd n. r. e.); *Permian Petroleum Co. v. Barrow*, 484 S.W.2d 631 (Tex.Civ.App.—El Paso, 1971, no writ).

The various matters which the Earthman defendants charge as errors in the conduct of trial will probably not occur in a second trial. However, we briefly allude to some of these.

■ We do not regard as error the trial court's ruling which allowed evidence of communications between Mrs. Earthman and her former husband, J. B. Earthman, III, based on conversations prior to and after their divorce. This testimony insofar as relevant to the existing controversy between them was admissible notwithstanding the marital privilege. McCormick & Ray, Texas Law of Evidence, Sec. 497 (1956); *Conley v. St. Jacques*, 110 S.W.2d 1238 (Tex.Civ.App.—Amarillo, 1937, writ dismissed).

■ We are further of the view that evidence of Mrs. Earthman's remarriage and divorce was properly excluded by the trial court's ruling. We fail to see the materiality or the relevancy of this testimony even as impeachment testimony to permit the jury to "evaluate her true motivations and testimonial posture."

A more serious question of admissibility is raised by the admission of certain testimony by which it was intended to prove that the Earthman defendants, acting through Michael Earthman and J. B. Earthman, III, had employed certain individuals to harass Mrs. Earthman, most notably by arranging her arrest on false felony charges. Through deposition testimony of J. B. Earthman, III and Michael Earthman it was shown that one George Norsworthy had been retained by Earthman's, Inc. and Resthaven Memorial Gardens, Inc. By the testimony of Michael Earthman it was shown that Norsworthy had worked as an

accountant for the Earthman corporations and had on one occasion brought to Michael Earthman evidence tending to implicate Mrs. Earthman in the sale of stolen property. Michael Earthman testified he did not know why Norsworthy had given this information to him, that he did not pay Norsworthy for it, and that he simply received the documents and put them in his safe. A witness named Forrest F. Baird then testified that at the request of Norsworthy he had contacted a man named C. E. Easley several times during March 1972. (Michael Earthman had testified that Baird had never represented any of the Earthman defendants but that he had once met Baird at the home of Norsworthy.) Upon this predicate Easley was permitted to give testimony, over the defendants' objections, with respect to his conversations with Baird and with J. B. Earthman, III. The jury was instructed to consider this testimony only as to J. B. Earthman, III and as impeachment of the prior testimony of Michael Earthman.

Easley testified that he was a former police officer employed as an investigator for Mrs. Earthman's attorney and that in March 1972 he had received a telephone call from Baird whom he knew only casually. He said Baird had inquired whether Easley could arrange to have Mrs. Earthman arrested on a charge of driving while intoxicated and whether stolen property or marijuana could be placed in her car without her knowledge. He testified that Baird told him that these things were to be done to pressure Mrs. Earthman into selling her stock and that Norsworthy and Michael Earthman had asked him to do this. He testified that Baird told him that Norsworthy in turn had told Baird that Norsworthy had been retained by the Earthmans, specifically Michael Earthman and J. B. Earthman, III. At the suggestion of Mrs. Earthman's attorney, Easley had made tape recordings of his conversations with Baird but the tapes were not played before the jury. Easley also testified that after Baird had spoken with him he arranged to meet with

J. B. Earthman, III who was aware that Easley had worked for his former wife's attorney and that Earthman had told him that since his former wife would not sell her stock something had to be done and that before the conversation terminated Earthman, who had become quite drunk, stated, "he would like to have her taken care of, he would like to have her rubbed out or something." We cannot say that the statements made to Easley by J. B. Earthman, III, a party defendant, were improperly received in evidence since they were in the nature of admissions by a party opponent. 2 McCormick & Ray, Texas Law of Evidence, Sec. 1121 et seq. (2d ed. 1956). However, the statements purportedly made to Easley by Baird present a more difficult problem. Ordinarily evidence that others have stated to the witness that a certain admission has been made by one of the parties to a suit, is inadmissible, 1 McCormick & Ray, Texas Law of Evidence, Sec. 792 (2d ed. 1956); *Ferguson v. Coleman*, 208 S.W. 571 (Tex.Civ.App.—Texarkana, 1919, no writ). In our opinion the hearsay testimony of Baird was inadmissible unless it was shown that he was an authorized agent speaking on behalf of one or more of the Earthman defendants. *Big Mack Trucking Company, Inc. v. Dickerson*, 497 S.W.2d 283 (Tex.1973). There was no evidence of authority having been given to Baird to speak on behalf of any of the Earthman defendants and the circumstantial evidence that Michael Earthman had on one occasion received incriminating documents from Norsworthy coupled with Baird's statement that he had contacted Easley at the request of Norsworthy, does not in our opinion rebut the presumption of lack of such authority. *Big Mack Trucking Co., Inc. v. Dickerson*, supra; Sec. 287 Restatement of Agency. In view of the nature of this testimony, it is difficult to perceive the extent of its prejudicial effect upon the jury's verdict. However, we assume the matter will be appropriately dealt with on another trial.

We finally arrive at a consideration of the matter of the exemplary damages. In

this connection, we also consider Mrs. Earthman's cross-point that the trial court erred in disregarding the jury's findings with respect to her claim of wilful harassment and intimidation. The jury found that the Earthman defendants had harassed and attempted to intimidate Mrs. Earthman with the intent of forcing her to accept less than the fair value of her stock; that such actions were done wilfully and maliciously; that Mrs. Earthman had sustained mental anguish as a result of such actions; that the sum of $150,000.00 would fairly compensate her for such injuries, and that she should also have, as exemplary damages, an equivalent sum.

Contrary to the assertion of the Earthman defendants we are of the view that in an appropriate case and upon proper pleading and proof exemplary damages may properly be awarded in a stock conversion case. The extent to which such punitive damages may be justified depends of course upon the degree of "malice" or wilful wrong in the act of conversion. It is not essential that "malice" be shown where it is established that some special loss or damage has been sustained by reason of some wilful or wanton act based upon improper motive. *Lack's Stores, Inc. v. Waisath*, 479 S.W.2d 406 (Tex.Civ.App.—Waco, 1972, no writ). Under such circumstances the jury may properly consider, among other factors, the mental anguish of the party injured as well as reasonable attorney's fees, inconvenience and other such items as naturally result from such improper conduct. *Lack's Stores, Inc. v. Waisath*, supra; *Security State Bank v. Spinnler*, 55 S.W.2d 128 (Tex.Civ.App.—Amarillo, 1932, writ dism'd).

While evidence of mental suffering might properly be considered by the jury with respect to the exemplary damage issues, it does not in our opinion constitute a basis for recovery of damages in an independent cause of action for wilful harassment and intimidation. *Harned v. E-Z Finance Co.*, 151 Tex. 641, 254 S.W.2d 81 (1953); *Daniels v. Conrad*, 331 S.W.2d 411, 417 (Tex.Civ.App.—Dallas, 1960, writ ref'd n. r. e.). Damages for mental suffering have been held recoverable without necessity of showing actual physical injury in a case of wilful invasion of right of privacy since that is "a right distinctive in itself and not incidental to some other recognized right for breach of which an action for damages will lie." *Billings v. Atkinson*, 489 S.W.2d 858 (Tex.1973). In our view the trial court properly disregarded the jury's verdict on the issues based upon the claim for malicious harassment and intimidation. *Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627, 630 (Tex.Sup.1968).

The judgment of the trial court is ordered reversed and remanded for further proceedings consistent with this opinion.