CONSOLIDATED BEARING AND SUP-
PLY COMPANY, INC., G.F. Taylor
and Tom White, Appellants,

v.

FIRST NATIONAL BANK AT
LUBBOCK, Appellee.

No. 07–85–0056–CV.

Court of Appeals of Texas,
Amarillo.

Oct. 29, 1986.

Donald M. Hunt, Carr, Evans, Fouts & Hunt, Lubbock, for appellants.

James H. Milam, Cecil Kuhne, Crenshaw, Dupree & Milam, Lubbock, for appellee.

Before REYNOLDS, C.J., and COUNTISS and BOYD, JJ.

COUNTISS, Justice.

This is a constructive trust case. Appellant Consolidated Bearing & Supply Company, Inc., a closely held corporation, and G.F. Taylor and Tom White, two of its officers, (hereafter collectively "Consolidated"), sought unsuccessfully in the trial court to impose a constructive trust on 7500 shares of Consolidated stock issued to a former employee and now owned by appellee, First National Bank at Lubbock. In this Court, Consolidated attacks the adverse trial judgment by five points of error, contending either that it conclusively established its right to the constructive trust or that the evidence is factually insufficient to support contrary findings. We affirm.

In 1976, Consolidated issued 7500 shares of stock to W.H. McWilliams, a director and employee. A by-law restriction on transferability of the shares was noted on the face of the stock certificate. The by-law provision required a shareholder to give the other shareholders or the corporation the right of first refusal on any "bona fide offer to sell."

In March 1979, McWilliams, while still employed by Consolidated, borrowed $300,-000 from the Bank and pledged the Consolidated stock to the Bank to secure the loan. The money was to be used in a business venture similar to some of Consolidated's activities. At that time, Consolidated had been a depositor and borrower at the Bank for over 40 years and was considered a valuable customer.

The Bank did not notify Consolidated of the stock pledge because it had no reason to believe McWilliams was in competition with Consolidated's business. In fact, McWilliams told his loan officer that Consolidated officials were aware of and aiding him with the new business. However, Consolidated's president testified that he was not aware of McWilliams' outside business ventures or the pledge until early in 1980.

Soon after Consolidated learned of McWilliams' activity, his employment with Consolidated ceased. Soon after that, McWilliams died, leaving a substantial portion of the loan unpaid. The Bank then instituted collection procedures and acquired, by a sheriff's sale, the 7500 pledged shares that are in dispute here.

In 1983, Consolidated filed this suit seeking a declaratory judgment that McWilliams' pledge of the restricted stock, and the subsequent foreclosure and sheriff's sale, were void, and that title to the stock should vest in Consolidated. Later trial amendments alleged alternatively that the shares remain subject to the restrictions, or that they belong in a constructive trust. In this Court, Consolidated pursues only the constructive trust theory, in opposition to a trial court fact finding that "[t]here was no confidential or fiduciary relationship existing between First National Bank at Lubbock and Plaintiffs."

It conclusively established the converse of that finding, says Consolidated, or at least the evidence is factually insufficient to support the finding. Consolidated's argument is that the Bank had a fiduciary duty, because of its relationship with Consolidated, to advise Consolidated that McWilliams was pledging its restricted stock to secure his loan.

■ When attacking a transaction involving an alleged fiduciary, the attacking party must first establish that a confidential or fiduciary relationship existed, before the burden shifts to the confidant to show the fairness of the transaction. *See Fitz-*

*Gerald v. Hull,* 150 Tex. 39, 237 S.W.2d 256, 261 (1951). Thus, Consolidated had the burden of proving a fiduciary relationship and the trial court finding that there was no fiduciary relationship must be reviewed under the legal and factual sufficiency standards of *Holley v. Watts,* 629 S.W.2d 694 (Tex.1982) and *Parrish v. Hunt,* 160 Tex. 378, 331 S.W.2d 304 (1960). The legal sufficiency test requires us to review the entire record to determine (1) if there is any evidence to support the failure to impose a constructive trust, and, if not, (2) if the justification for such a trust is conclusively established. *Holley v. Watts,* 629 S.W.2d at 696. If the legal sufficiency attack is defeated, we must then test the factual sufficiency by examining the record for some probative evidence to support the finding, and, if we find supportive evidence, determine whether, in light of all the evidence, the finding is not manifestly unjust. *Parrish v. Hunt,* 160 Tex. 378, 331 S.W.2d at 305–6.

▮▮▮ A constructive trust is an equitable remedy recognized by Texas courts when one obtains legal title to property in violation of a confidence of fiduciary relations. *Binford v. Snyder,* 144 Tex. 134, 189 S.W.2d 471, 472–3 (1945). As this Court has declared, it is imposed to prevent a person from holding something that he has gained "by reason of a fiduciary relation subsisting between him and those for whose benefit it is his duty to act." *Cawthon v. Cochell,* 121 S.W.2d 414, 417 (Tex. Civ.App.—Amarillo 1938, writ dism'd); *see also Hull v. Fitz-Gerald,* 232 S.W.2d 93, 99 (Tex.Civ.App.—Amarillo 1950) *aff'd,* 150 Tex. 39, 237 S.W.2d 256 (1951).*

▮▮▮ Proving the necessary confidential relationship requires more, however, than evidence of prior dealings between the parties, and the subjective trust one party places in another does not establish a confidential relationship. *Consolidated Gas & Equipment Co. v. Thompson,* 405 S.W.2d 333, 336 (Tex.1966); *Thigpen v. Locke,* 363 S.W.2d 247, 253 (Tex.1962); *Thomson v. Norton,* 604 S.W.2d 473, 476 (Tex.Civ.App. —Dallas 1980, no writ). Instead, it arises from formal fiduciary relations such as attorney-client, partnership, trustee-cestui que trust, and from informal social, moral or personal relationships. *Thigpen v. Locke,* 363 S.W.2d at 253; *Fitz-Gerald v. Hull,* 237 S.W.2d at 261; *Winston v. Lake Jackson Bank,* 574 S.W.2d 628, 629 (Tex. Civ.App.—Houston [14th Dist.] 1978, no writ). Proof of a confidential relationship outside the formal cases requires evidence that the dealings between the parties have continued for so long that one party is justified in relying on the other to act in his best interest. *Thomson v. Norton,* 604 S.W.2d at 476. The Supreme Court recognizes that a fiduciary relationship can grow out of an informal relationship "when, over a long period of time, the parties had worked together for the joint acquisition and development of property previous to the particular agreement sought to be enforced." *Consolidated Gas & Equipment Co. v. Thompson,* 405 S.W.2d at 337.

Courts have been strict in applying this test, however, emphasizing the distinction between factual proof of a confidential relationship and mere subjective assertions by one party. Two cases factually compatible with this case are illustrative. In *Thigpen v. Locke, supra,* the Supreme Court, while recognizing the principle that trust and confidence can arise informally from purely personal relationships, refused to find a confidential relationship between two parties to a deed when the grantee was a trust officer at a local bank. The evidence showed that the Lockes had a longstanding business and personal relationship with Thigpen, who was a director, officer and shareholder in their corporation, but the court held that there was no evidence to show that there existed anything more than a debtor-creditor relationship. *Thigpen v. Locke,* 363 S.W.2d at 253.

---

* Even without a confidential relationship, actual fraud by one party may also justify the imposition of a constructive trust, *Meadows v. Biersch-* *wale,* 516 S.W.2d 125, 128 (Tex.1974), but Consolidated did not plead fraud.

In contrast to *Thigpen*, the transaction in dispute in the present case is a loan between the bank and another of its customers; it involves Consolidated only indirectly. The corporation was not a party to the transaction it seeks to set aside.

In *Winston v. Lake Jackson Bank*, the endorsers of a promissory note failed to prove that a fiduciary relationship existed between them and the bank, requiring the bank to advise the endorsers of their potential individual liability before getting their signatures. The endorsers submitted as evidence to support their claim the following: (1) extensive prior dealings between the endorsers and the bank; (2) the fact that the bank president had been a financial advisor to one of the parties; and (3) the existence of prior notes entered into with the understanding that the liability would be limited. *Winston v. Lake Jackson Bank*, 574 S.W.2d at 628. The court concluded that evidence showing the existence of a debtor-creditor relationship for several years did not justify the endorser's assumption that the bank would act in their interest.

■ We reach the same conclusion here. However, Consolidated points to the testimony of a bank officer, Jim Cummings, to prove a confidential relationship. Cummings indicated that Consolidated was a substantial and valued customer of the Bank and he opined that the banker-customer relationship involves (1) a "kind of trust relationship" between the parties, (2) the disclosing of information about their business not shared with the public, and (3) the sharing of information that may be detrimental to either party. Those "admissions" of a relationship of trust and of a duty to disclose establish a confidential relationship, says Consolidated. However, we view the evidence only as proof of a long-standing banker-depositor relationship; Cummings admits to nothing more. Such a debtor-creditor relationship does not conclusively establish a relationship of trust and confidence. *See Thigpen v. Locke*, 363 S.W.2d at 253.

■ Cummings also testified that the Bank's loan committee suggested he determine whether McWilliams had received approval from Consolidated for his business venture. He asked McWilliams about it and, after receiving McWilliams' assurance that Consolidated consented to the venture, did not pursue the matter further. Consolidated says this shows a recognition by the Bank of its fiduciary duty to disclose, and that such recognition conclusively established a confidential relationship. However, Cummings also testified that his direction from the loan committee was to satisfy himself that there was no conflict between McWilliams and Consolidated. The Bank's desire to avoid potential conflicts of interest when dealing with numerous business clients does not impose on it a duty to disclose to certain customers the extent of its dealings with other customers.

In the final analysis, we have evidence of a normal banking relationship between the Bank and a customer. We cannot conclude that, as a matter of law, the relationship carried a fiduciary label or that the finding of no fiduciary relationship is manifestly unjust.

■ One other matter requires comment. Implicit in Consolidated's argument is the suggestion that the Bank knew or should have known that McWilliams' pledge of the stock and the Bank's purchase of it at the sheriff's sale were violations of the by-law restriction by which other stockholders had a right of first refusal of any "bona fide offer to sell" the stock. However, stock restrictions are not looked upon with favor and are strictly construed. In *Earthman's, Inc. v. Earthman*, 526 S.W.2d 192 (Tex.Civ.App.—Houston [1st Dist.] 1975, no writ), for example, the Houston First Court of Appeals refused to allow a corporation the right, pursuant to a transfer restriction in its articles, to purchase stock awarded to the shareholder's wife in a divorce action. "It has generally been held that such a restriction is inapplicable to a transfer occurring as a result of an involuntary sale or by operation of law unless by specific provi-

sion in the restriction it is made applicable." *Earthman's, Inc. v. Earthman,* 526 S.W.2d at 202. Furthermore, it is generally recognized that such restrictions apply only to sales, and not mere transfers which do not pass title. *See generally* Annot., 2 A.L.R.2d 745, 754–756 (1948). Thus, neither McWilliams' pledge of stock to the Bank nor the Bank's purchase of it at the involuntary sale violated the restriction. Consolidated's five points of error are overruled.

The judgment is affirmed.