Thomas J. **MOREY**, Appellant,

v.

Steven J.L. **PAGE**, Appellee.

No. 05–89–01437–CV.

Court of Appeals of Texas, Dallas.

Nov. 30, 1990.

J. Albert Kroemer, Paula L. Miano, Dallas, for appellant.

Jay J. Madrid, David A. Given, Dallas, for appellee.

Before WHITHAM, ROWE and THOMAS, JJ.

## OPINION

ROWE, Justice.

Thomas J. Morey appeals from a judgment rendered in favor of Steven J.L. Page in a lawsuit involving disputed claims of ownership of an automobile. In sixteen points of error, Morey argues that: (1) the trial court erred in granting a directed verdict in favor of Page; (2) the trial court erred in failing to submit requested questions, definitions, and instructions to the jury; (3) the trial court erred in ascertaining the law to be applied to the case; (4) the trial court erred in its findings regarding agency; (5) there was no evidence supporting the award of attorney fees; (6) the evidence was insufficient to support jury findings regarding conversion; and (7) the trial court erroneously submitted a jury question and erroneously entered judgment concerning the alleged assertion of a bad faith deceptive trade practices claim. In three cross-points of error, Page complains of the amount of attorney fees awarded by the trial court. We overrule all of the points of error and all of the cross-points, and we affirm the judgment of the trial court.

In July 1985, Page purchased a 1967 Bentley automobile in England. He brought the car to the United States and had it transported to Dallas. In December 1985, Page entered into a vehicle consignment agreement with Peter F. Yardley. The agreement provided that the vehicle was consigned to Yardley for resale at a net return of $20,000 to Page. Page left the Bentley in Yardley's possession along with keys to the car, the import documents, maintenance records, and a prior English registration document. Page retained the original English title.

In January 1986, Yardley offered to sell the Bentley to Morey for $9,000. Morey accepted the offer and paid Yardley for the car. Yardley delivered to Morey the car, the keys, and the documentation previously provided by Page. Morey was unaware of Page's interest in the Bentley and assumed that Yardley was the owner of the car. Yardley made no mention of Page's interest, and Morey had no knowledge of the consignment agreement at the time of the transaction between Morey and Yardley. Yardley did not inform Page of the transaction and absconded with the $9,000 paid by Morey.

In February 1986, after Page was unable to contact or locate Yardley, Page discovered that Morey had bought the Bentley from Yardley. Page contacted Morey, informing him that he (Page) owned the car. Morey declined to deliver the car to Page unless he was reimbursed for the $9,000 that he had paid to Yardley. Morey made demand upon Page for the title to the Bentley. Page declined to deliver the title, and Morey and Page began discussing possible means for resolving their dispute concerning ownership of the car.

Ultimately, Morey filed suit against Page, asserting claims of breach of contract and deceptive trade practices. Morey also sought a declaratory judgment that he was the owner of the car and an order compelling transfer of title to him. Page asserted counterclaims of conversion, breach of an alleged settlement contract, and bad faith filing of a deceptive trade practices claim. Page also sought a declaratory judgment that he was the owner of the Bentley. After both parties had submitted evidence before a jury, the trial court directed a verdict against Morey on all of his claims. The court also directed a verdict in favor of Page on his claim for a declaratory judgment. After the jury had answered limited questions, the trial court

rendered judgment in favor of Page on these directed verdicts and on jury findings concerning conversion and attorney fees.

In his points of error one through four, Morey contends that the directed verdicts were erroneous because the evidence did not conclusively establish that Yardley was not authorized to sell the Bentley to Morey. In his fifth point of error, Morey maintains that the trial court erred in not submitting to the jury requested questions, definitions, and instructions regarding Morey's claims as to agency, breach of contract, ownership of the Bentley, and deceptive trade practices. In points of error six through eight, Morey argues that the trial court erred in ascertaining the law which was properly applicable to this case. We consider all of these points together.

■ In reviewing the propriety of a directed verdict, we determine whether there is any evidence of probative force to raise fact issues on the material questions presented. We consider the evidence in the light most favorable to the party against whom the verdict was instructed, disregarding all contrary evidence and inferences. *Henderson v. Travelers Ins. Co.*, 544 S.W.2d 649, 650 (Tex.1976). A directed verdict is proper if the evidence proves conclusively the truth of fact propositions which, under the substantive law, establish the right of the movant, or negate the right of his opponent, to judgment. *Fort Worth State School v. Jones*, 756 S.W.2d 445, 446 (Tex.App.—Fort Worth 1988, no writ); *Riley v. Powell*, 665 S.W.2d 578, 580 (Tex. App.—Fort Worth 1984, writ ref'd n.r.e.). A directed verdict is warranted when the evidence is such that no other verdict can be rendered and the moving party is entitled, as a matter of law, to judgment. *Wright v. General Motors Corp.*, 717 S.W.2d 153, 155 (Tex.App.—Houston [1st Dist.] 1986, no writ). As to the propriety of refusing to submit issues to the jury, a

trial court must submit a jury question even if the evidence is factually insufficient to support a judgment based on the submitted proposition; the court may refuse to submit a question only if there is no evidence raising the issue. *See Burke Wiley, Inc. v. Lenderman*, 545 S.W.2d 226, 228 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.). Thus, when determining the propriety of directed verdicts on issues which the trial court refused to submit to the jury, the issue is whether, under the applicable substantive law, there was any evidence supportive of the claims which the complaining party contends should have been submitted to the jury.

■ Because the parties differ on the question of which law is properly applicable to resolution of this case, we deal with that issue first. Page maintains that the controlling law is found in the Certificate of Title Act. *See* TEX.REV.CIV.STAT.ANN. art. 6687–1 (Vernon 1977 & Supp.1991). Morey asserts that section 2.403 of the Business and Commerce Code is properly applicable to this case. *See* TEX.BUS. & COM.CODE ANN. § 2.403 (Tex. UCC) (Vernon 1968).[1] With respect to subsequent sales of vehicles (all sales after the initial sale of a vehicle, *see* TEX.REV.CIV.STAT.ANN. art. 6687–1, §§ 7, 8 (Vernon 1977)), the Certificate of Title Act provides:

(a) No motor vehicle may be disposed of at a subsequent sale unless the owner designated in the certificate of title transfers the certificate of title, at the time the motor vehicle is transferred, on a form prescribed by the Department.... No title to any motor vehicle shall pass or vest until the transfer is so executed.

TEX.REV.CIV.STAT.ANN. art. 6687–1, § 33(a) (Vernon Supp.1991). All sales made in violation of the Act are void, and no title passes until the provisions of the Act have been complied with. *Id.* § 53 (Vernon

---

1. Morey also relies upon statutes contained in chapter 9 of the Business and Commerce Code. *See* TEX.BUS. & COM.CODE ANN. §§ 9.302, 9.307 (Tex. UCC) (Vernon Supp.1990). That chapter contains Uniform Commercial Code provisions concerning secured transactions. However, we are unable to determine from the record that any secured transaction or security interest (either perfected or nonperfected) is involved in this case, nor has Morey provided any satisfactory explanation as to why the chapter 9 provisions relied upon are relevant to resolution of this case. We therefore deal solely with Morey's reliance upon section 2.403.

1977). Section 2.403 of the Business and Commerce Code provides:

> (b) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.

TEX.BUS. & COM.CODE ANN. § 2.403(b) (Vernon 1968).[2]

Although section 2.403 and the Certificate of Title Act provisions might appear to be in conflict in a case such as this one, the provisions have been harmonized. This Court, in a prior case involving the sale of a vehicle, without an accompanying transfer of the certificate of title, by a merchant entrusted with the car, concluded that these statutes may reasonably be construed so as to give effect to both. Interpreting section 2.403(b), the Court reasoned that the proviso that the merchant is empowered "to transfer all rights of the entruster" is intended to give the merchant the same power to transfer which the owner of the goods can exercise. This Court therefore held that if the owner of a vehicle has no power to dispose of the vehicle without a proper transfer of the certificate of title, then no merchant to whom the vehicle is entrusted has the power to dispose of the vehicle without a proper transfer of the certificate. See Pfluger v. Colquitt, 620 S.W.2d 739, 741 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.). Having thus harmonized the two statutes, this Court held that the Certificate of Title Act controls such transactions. See id. at 743. The transaction in the present case, being a sale like the sale in the Pfluger case, is likewise governed by the Certificate of Title Act.

The foregoing does not, however, necessarily lead to the conclusion that the sale of the Bentley to Morey was void because there was no transfer of the certificate of title. The courts have held that the sale of a car without complying with the Certificate of Title Act is valid and effective as between the parties to the sale. See Phil Phillips Ford, Inc. v. St. Paul Fire and Marine Ins. Co., 465 S.W.2d 933, 937 (Tex.1971); Cash v. Lebowitz, 734 S.W.2d 396, 398 (Tex.App.—Dallas 1987, writ ref'd n.r.e.). When there has been such a sale, the purchaser has the right to demand a proper transfer of the certificate of title. Cash, 734 S.W.2d at 398–99; Pfluger, 620 S.W.2d at 742. Thus, in the case at hand, if Yardley, as Page's agent, was authorized to make the sale to Morey, the sale would be valid and effective as a sale between Page, the seller, and Morey, the buyer. See IFG Leasing Co. v. Ellis, 748 S.W.2d 564, 566 (Tex.App.—Houston [1st Dist.] 1988, no writ); Cash, 734 S.W.2d at 398; Pfluger, 620 S.W.2d at 742.

Morey maintains that there was at least some evidence that Yardley did act as Page's agent; therefore, the issue of agency and associated issues should have been submitted to the jury. Morey contends that evidence was presented indicating that Yardley had either actual or apparent authority to sell the car.

Actual authority encompasses authority which the principal (1) intentionally conferred upon the agent, or (2) intentionally allowed the agent to believe that he possessed, or (3) by want of due care allowed the agent to believe that he possessed. Currey v. Lone Star Steel Co., 676 S.W.2d 205, 209–10 (Tex.App.—Fort Worth 1984, no writ); National Cash Register Co. v. Wichita Frozen Food Lockers, Inc., 172 S.W.2d 781, 786–87 (Tex.Civ.App.—Fort Worth), aff'd, 142 Tex. 109, 176 S.W.2d 161 (1943). Thus, actual authority includes both express and implied authority. Behring Int'l, Inc. v. Greater Houston Bank, 662 S.W.2d 642, 649 (Tex.App.—Houston [1st Dist.] 1983, writ dism'd). The sale of the Bentley to Morey was beyond the authority granted to Yardley under the consignment agreement. The agreement authorized sale of the Bentley only if such sale resulted in a net return of $20,000 to Page. Clearly, the sale of the Bentley to Morey for $9,000 was not in accordance with the express provisions of the consignment agreement. Page testified that Yard-

---

**2.** Both parties apparently agree that Yardley was a merchant who dealt in automobiles like the Bentley and that Morey bought the Bentley in the ordinary course of business.

ley was not authorized to sell the car for $9,000. We find no evidence in the record indicating that Yardley was authorized, either expressly or impliedly, to make the kind of sale made to Morey in violation of the parties' express agreement. We therefore hold as a matter of law that Yardley did not have actual authority to make the sale to Morey.

 Apparent authority is based on the doctrine of estoppel. *Ames v. Great S. Bank*, 672 S.W.2d 447, 450 (Tex.1984); *Mobil Oil Corp. v. Frederick*, 615 S.W.2d 323, 325 (Tex.Civ.App.—Fort Worth), *aff'd in part and rev'd in part on other grounds*, 621 S.W.2d 595 (Tex.1981) (per curiam). A prerequisite to a proper finding of apparent authority is evidence of conduct by the principal, relied upon by the party asserting apparent authority, which would lead a reasonably prudent person to believe that an agent possessed the asserted authority. *Ames*, 672 S.W.2d at 450; *see Frederick*, 615 S.W.2d at 325. Thus, there can be no apparent authority created by an undisclosed principal. RESTATEMENT (SECOND) OF AGENCY § 8 comment a (1958); *see Smith-Perry Elec. Co. v. Transport Clearings*, 243 F.2d 819, 821 (5th Cir.1957); 3 TEX.JUR. 3d *Agency* § 51 (1980). The evidence conclusively established that Page, the principal, was undisclosed at the time of the transaction between Morey and Yardley. Therefore, Morey clearly did not rely upon any conduct by Page which could have led Morey to believe that Yardley had apparent authority, as Page's agent, to make the sale.

 Having determined that there was no evidence supporting the two grounds (actual or apparent authority) for Morey's assertion of an agency relationship, the transaction between Morey and Yardley cannot be deemed a transaction between buyer and seller. Accordingly, Morey has no right to demand transfer of the certificate of title because the one exception to mandatory compliance with the Certificate of Title Act is not applicable to this case. *See Pfluger*, 620 S.W.2d at 742. Because the Certificate of Title Act was applicable

and was not complied with, we overrule points of error one through eight.

In points nine through twelve, Morey complains that the trial court's implied finding that Yardley was not authorized to sell the Bentley is against the great weight and preponderance of the evidence. Morey reasserts, in points nine through eleven, his argument that the trial court erred in concluding that section 2.403 of the Business and Commerce Code was not applicable to this case. Our previous discussion establishes that the trial court was correct in concluding that section 2.403 did not have controlling effect. Our determination that there was no evidence supporting the claim that Yardley was authorized to make the sale to Morey and that the evidence conclusively established that Yardley had no such authorization effectively disposes of Morey's contention that the trial court's finding on agency was against the great weight and preponderance of the evidence. We overrule points nine through twelve.

 In his thirteenth point of error, Morey maintains that the trial court erred in awarding judgment for attorney fees because the evidence failed to show that all of such fees were attributable to claims for which attorney fees were authorized. However, although Morey objected to the jury question on attorney fees, he did not object on the ground that it failed to provide for segregation of attorney fees. Therefore, any error committed by the trial court in failing to award only those fees attributable to claims for which attorney fees were authorized has been waived. *See Aero Energy, Inc. v. Circle C Drilling Co.*, 699 S.W.2d 821, 823 (Tex.1985); *Tempo Tamers, Inc. v. Crow-Houston Four, Ltd.*, 715 S.W.2d 658, 668–69 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

 In the fourteenth point of error, Morey contends that the evidence was insufficient to support the jury's findings concerning conversion. In reviewing this apparent factual insufficiency point of error, we must consider and weigh all of the evidence, and we cannot set aside the jury's findings unless they are so contrary to the overwhelming weight of the evidence as to

be clearly wrong and unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (per curiam).

Morey first argues that the evidence was insufficient to support the jury's finding that his acts constituted conversion. He relies on evidence indicating that he made a good faith effort to resolve a matter that was the subject of a dispute between the parties.

■■■■■ Conversion is the wrongful exercise of dominion or control over the property of another in denial of, or inconsistent with, the other's rights in the property. *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 446 (Tex.1971). In an action for conversion, it is no defense that the defendant acted in complete innocence and perfect good faith. *Adam v. Harris*, 564 S.W.2d 152, 155 (Tex.Civ.App.—Houston [14th Dist.] 1978, writ ref'd n.r.e.); *Ligon v. E.F. Hutton & Co.*, 428 S.W.2d 434, 438 (Tex. Civ.App.—Dallas 1968, writ ref'd n.r.e.); *see Ferrous Prods. Co. v. Gulf States Trading Co.*, 323 S.W.2d 292, 295 (Tex.Civ. App.—Houston [1st Dist.] 1959), *aff'd*, 160 Tex. 399, 332 S.W.2d 310 (1960). A mistake as to ownership is not a defense to a claim of conversion. *Lindsey v. Security Sav. Ass'n*, 556 S.W.2d 570, 571 (Tex.Civ. App.—Dallas 1977, no writ). However, a qualified refusal to surrender a chattel upon request may be justified in order to secure a reasonable period of time in which to investigate the rights of the parties. *Stein v. Mauricio*, 580 S.W.2d 82, 83 (Tex. Civ.App.—San Antonio 1979, no writ); *Earthman's, Inc. v. Earthman*, 526 S.W.2d 192, 204, 206 (Tex.Civ.App.—Houston [1st Dist.] 1975, no writ); *see* RESTATEMENT (SECOND) OF TORTS § 240(1) (1965). The person in possession of the chattel must disclose the qualification to the owner; the reason for the qualified refusal must be distinctly communicated. *Stein,*

580 S.W.2d at 83; *see* RESTATEMENT (SECOND) OF TORTS § 241 (1965).

■■■■■ Morey relies upon *Earthman* as support for his contention that, as a matter of law, a good faith effort to end a dispute precludes a finding or judgment of conversion. However, we find no evidence in the record supportive of required elements of this defense. There was no evidence of a proper qualified refusal to surrender possession of the Bentley. Although Morey offered to return the car if the $9,000 purchase price was returned to him, that qualification (which effectively required the owner to pay for a car which he had already paid for) is not one contemplated by the authorities relied upon by Morey. There was evidence that Morey refused to return the car unless pursuant to a court order, but this qualification also is not proper under the law. Although there was evidence that the parties attempted to settle the dispute, we find no indication in the record that Morey notified Page that he refused to return the car in order to obtain a reasonable period of time to be used for purposes of investigating the validity of Page's claim of ownership.[3] Even if we assume that there was evidence from which the jury could have inferred a proper qualified refusal, we cannot say that the evidence was such that the jury was bound to make such a finding. Moreover, the defense now asserted on appeal was not submitted to the jury, nor does Morey complain that it should have been submitted. Therefore, this ground of defense, which was certainly not conclusively established under the evidence, was waived. *See* TEX.R.CIV.P. 279; *Pope v. Darcey*, 667 S.W.2d 270, 274 (Tex.App.— Houston [14th Dist.] 1984, writ ref'd n.r.e.).

■■■■■ Morey next contends that the evidence was insufficient to support the jury's

---

3. Furthermore, if the issue were presented because of a proper qualified refusal, we would be inclined to hold as a matter of law that Morey's retention of the Bentley lasted for an unreasonable period of time. Page notified Morey of his claim to the car in February 1986. (The jury found that the conversion took place as of February 7, 1986, a finding disputed by Morey as discussed below.) In mid-May 1986, when Mor-

ey filed suit against Page seeking transfer of the certificate of title, and even at the time of the trial of this case in May 1989, Morey still had possession of the car. Again, we note that innocence and good faith do not constitute defenses to a claim of conversion; the issue is whether there was a *qualified* refusal to surrender the car in order to secure a *reasonable* period of time for investigation of the owner's claim.

finding that conversion of the car took place on February 7, 1986. He notes that the record contains no reference to this specific date. Although Page gave testimony indicating that he learned in mid-February that Morey had purchased the Bentley from Yardley, Morey himself testified that Page called him and claimed ownership within about a week after the purchase of the car. Since the evidence shows that Morey purchased the car from Yardley on January 30, there was evidence supporting the jury's finding that the conversion took place on February 7. We cannot say that the finding is against the great weight and preponderance of the evidence.

Morey maintains that there was insufficient evidence to support the jury's finding of malicious conversion and the corresponding award of exemplary damages. He argues that there was no evidence of ill will, spite, evil motive, or the purposing of injury to another. Morey also contends that there was no basis for a finding of implied malice since he made efforts to resolve the dispute concerning ownership of the Bentley.

 Malice may be actual or implied. *Courtesy Pontiac, Inc. v. Ragsdale,* 532 S.W.2d 118, 121 (Tex.Civ.App.—Tyler 1975, writ ref'd n.r.e.). Malice or ill will may be implied from the knowing conversion of another's property without justification. *Steakley Bros. Chevrolet, Inc. v. Westbrook,* 558 S.W.2d 544, 547 (Tex.Civ. App.—Waco 1977, writ ref'd n.r.e.); *Ragsdale,* 532 S.W.2d at 121. There was evidence that Morey refused to return the car to Page after being informed that Page was the rightful owner. Morey applied for and obtained a Texas certificate of title on the Bentley even though he was aware that Page asserted ownership of the vehicle. And, as demonstrated previously, Morey had no legal right to continued possession of the car. We determine that the evidence was sufficient to provide a basis for the jury's finding of malice and award of exemplary damages.[4] Because the jury's find-

ings relating to conversion were supported by the evidence, we overrule the fourteenth point of error.

 In the fifteenth point of error, Morey asserts that the trial court erred by submitting a question to the jury on the issue of whether he had filed a deceptive trade practices claim in bad faith. Morey argues in the sixteenth point that the trial court erred in entering a judgment based on the jury's affirmative answer. Morey is correct in asserting that the bad faith issue is to be decided by the court. *See Donwerth v. Preston II Chrysler–Dodge, Inc.,* 775 S.W.2d 634, 637 (Tex.1989); TEX.BUS. & COM.CODE ANN. § 17.50(c) (Vernon 1987). However, the record shows that no reversible error was committed. The trial court disregarded the jury's answer to the bad faith question, and no part of the court's judgment is based on the jury's answer. Although attorney fees may be awarded based on a finding that a deceptive trade practices action was brought in bad faith, *see* TEX.BUS. & COM.CODE ANN. § 17.50(c), the judgment clearly recites that attorney fees were awarded under the declaratory judgment statute. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 37.009 (Vernon 1986). We overrule the fifteenth and sixteenth points of error.

 In three cross-points of error, Page maintains that the trial court erred in awarding attorney fees in an amount less than the amount found by the jury. We need not address the merits of this contention because we find nothing in the record indicating that the trial court was apprised of the complaint now raised on appeal. Any alleged error was therefore waived. *See* TEX.R.APP.P. 52(a); *Larrumbide v. Doctors Health Facilities,* 734 S.W.2d 685, 693 (Tex.App.—Dallas 1987, writ denied). We overrule the three cross-points.

We affirm the judgment of the trial court.

---

**4.** In any event, we are inclined to view the jury's award of one dollar in exemplary damages as legally insignificant.