**Larry BOSWORTH and Donna Bosworth, Appellants,**

v.

**GULF COAST DODGE, INC. d/b/a Clear Lake Dodge, Appellee.**

No. A14–92–01369–CV.

Court of Appeals of Texas, Houston (14th Dist.).

May 5, 1994.

David D. Balkum, Houston, for appellants.

Walter R. Grimes, John J. Browne, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and MURPHY and ELLIS, JJ.

### OPINION

ELLIS, Justice.

This is a conversion case. Following a non-jury trial, the trial court entered judgment for Gulf Coast Dodge, Inc. d/b/a Clear Lake Dodge (Dodge), appellee. We affirm.

In February of 1991, appellee acquired a 1988 Mazda RX–7 (the Mazda) as a trade-in from Roderick A. Garcia. Mr. Garcia was purchasing a car from appellee and used the Mazda as a trade-in. The car was stored on appellee's lot. In April of 1991, during its monthly inventory, appellee discovered that the Mazda was missing. On April 26, 1991, a representative for appellee, Carolyn Garland, notified the Harris County Sheriff's Department and reported the Mazda as stolen.

Before appellee had even discovered the Mazda was missing, the Galveston Police Department had located it and determined that the vehicle had been abandoned. The car had been ticketed by two Galveston police officers. A few days later, on March 26, 1991, Officer Johnican, a Galveston police officer, requested that the Mazda be towed as an abandoned vehicle because the car had been ticketed and the police department was unable to contact the owner. In Galveston, the police do not actually tow the vehicles themselves; rather, there are thirteen wrecker companies in town with emergency permits allowing them to tow vehicles for the police department. The companies rotate so that whichever wrecker is up next in the rotation is called by the police department to do the job. On this occasion, the wrecker service owned by Larry and Donna Bosworth (the Bosworths), appellants, was called to pick up the Mazda.[1]

At the time the Mazda was picked up, the wrecker driver for the Bosworth's wrecker company, Butch Herring, accepted the Mazda and signed a form provided by Officer Johnican entitled "GALVESTON POLICE DEPARTMENT—Wrecker Pick–Up Acceptance Sheet." The form provided information about the Mazda, the location of the car, the name of the wrecker company, and the reason for the pick-up, i.e., "vehicle has been abandoned." Butch Herring towed the vehicle to the Bosworths' storage facility.

Donna Bosworth obtained the names and addresses of the lienholder and record owner of the Mazda through a computer owned by her sister, Teresa Black. The computer identified the lienholder as BancTexas of Houston and the owner as Roderick A. Garcia. Allegedly, the computer did not show the car as stolen. Appellants sent notices to BancTexas and Garcia by certified mail, return receipt requested, on April 1, 1991. The notice sent to BancTexas stated that the Mazda was picked up in Galveston by appellants' wrecker service by the authority of the Galveston Police Department because the Mazda was an abandoned vehicle. The notice listed the towing and storage fees due and informed BancTexas that it could reclaim the Mazda upon payment of the charges. The notice also stated that if BancTexas did not respond to the notice and reclaim the Mazda, it would be turned over to the "City of Galveston Police Department under the provisions of the Texas Abandoned Motor Vehicle Act."

On April 5, 1991, BancTexas responded to the notice stating that it had no interest in the vehicle. Obviously BancTexas no longer had an interest in the vehicle because Dodge had paid off the note on the Mazda when it took it in trade from Garcia. In fact, Donna Bosworth testified that she spoke to a representative of the bank, Mr. Ralphael Toney, who told her that the bank did not have a lien because it had been paid off. Likewise, Garcia received the notice and did not claim the vehicle for he too, no longer had any interest in the Mazda because he had sold it to Dodge. After sending out the notices and waiting for a period of time, appellants decided to hold a foreclosure sale for the Mazda based on an alleged storage lien arising un-

---

1. Though Donna Bosworth testified that her wrecker company was not "hired" by the city to pick up the Mazda, it is clear from the testimony and the exhibits in the record that the Bos-worths' wrecker service was called by the police department because it was next up in the rotation and at the police department's request, picked up the Mazda as an abandoned vehicle.

der the Texas Property Code. Section 70.-003(c) of the code provides that a garageman with whom a motor vehicle is left for care has a lien on it for the charges incurred in caring for the vehicle, including reasonable towing charges. TEX.PROP.CODE ANN. § 70.003(c) (Vernon Supp.1994).

Pursuant to this decision, Donna Bosworth posted a notice of foreclosure sale at the Galveston County Courthouse. The handwritten notice read as follows:

Bosworth Wrecker Service
516 53rd St Galveston, Tx.
Vehicle Storage Facility License # 1373

The following vehicle will be for sale at a public auction on May 4, 1991. This notice is being given as required by Texas State Department of Highways & Public Transportation D12–265 storage lien:

| | Lic. # | Vin. # | Price |
|---|---|---|---|
| 1988 Mazda CPE | 042–VQA | JM1FC3316J0621316 | $380.00 |

Posted by: [/s/] Donna Bosworth

---

The sale was held on May 4, 1991, but no one came and the Bosworths kept the car. The Galveston Police Department was never notified of appellants' intent to sell the Mazda. Thus, it did not agree to or acquiesce in the sale. Donna Bosworth testified that they did not pay anything for the car, other than the charges that had already accrued on the vehicle. On May 6, 1991, Donna Bosworth filled out and filed the forms necessary to apply for a certificate of title. One of the forms was a document generated by the State Department of Highways and Public Transportation called a " 'QUESTIONNAIRE AFFIDAVIT' For Foreclosure Under Statutory STORAGE–MECHANIC'S LIEN." On that form, filled out, signed, and sworn to by Donna Bosworth, it stated that the Mazda was picked by Bosworth Wrecker Service on May 26, 1991, per a request by the Galveston Police Department and that the police department was the party that left the Mazda for storage. The affidavit specifically stated "vehicle picked up [by] authority of Galveston Police Department for being abandoned." It also stated that the owner and lienholder had been contacted and that the car was sold to the highest bidder at a public sale on May 4, 1991.

Sometime before May 15, 1991, Donna Bosworth learned that her title application had been rejected. She corrected the problem and reapplied on May 23, 1991. The second application was accepted and she received the certificate of title on June 6, 1991. On May 16, 1991, Sergeant Jack Dawson of the Galveston Police Department was at Teresa Black's wrecker yard with another officer inspecting vehicles. Donna Bosworth was also at the yard with the Mazda. Donna Bosworth mentioned to Sergeant Dawson that the vehicle had never been picked up and that she had applied for title to it. Sergeant Dawson inspected the Mazda and later that same day learned it was a stolen vehicle. He called Donna Bosworth and reported to her that the Mazda had been stolen from Harris County.

Also on May 16th, Sergeant Dawson located Roderick A. Garcia and was told that Garcia had traded the car to Dodge. He then called Dodge and told a representative of the dealership that the Mazda had been located, picked up by the police, and was currently at Bosworth Wrecker Service in Galveston. He also called the Harris County Sheriff's Department to inform them that the car had been located. W. Harry Buescher, the secretary-treasurer for Dodge, called Sergeant Dawson to get information about picking up the car. He also contacted Bosworth Wrecker Service and spoke with Teresa Black concerning the charges owed for storage and towing. Sergeant Dawson told Mr. Buescher to send someone down to Galveston to pay the charges and pick up the vehicle. In preparation for this, Sergeant Dawson filled out and signed a "vehicle release form affidavit." Whoever picked up the car would need this affidavit to present to the wrecker service in order to get the car.

Dodge gave their agent, Convenient Drive Service (CDS), cash to cover the storage and towing charges and instructed CDS to send someone down to pick up the Mazda. On May 17, 1991, two CDS drivers went to Galveston, picked up the release affidavit from

the police department and went over to Bosworth Wrecker Service to get the car. When the drivers got to the yard, Larry Bosworth refused to accept the payment for the charges and refused to release the Mazda. The CDS drivers returned to Houston with the money and without the car. On May 20, 1991, Dodge again attempted to pick up the Mazda but appellants refused to turn it over.

On June 7, 1991, Mr. Buescher sent a letter to appellants demanding they surrender the Mazda. The letter also stated that if they did not return the car, Dodge would pursue legal action. Appellants did not surrender the car. On June 13, 1991, Dodge filed suit. In its Fourth Amended Original Petition, Dodge alleged that the Bosworths and Teresa Black conspired together to defraud Dodge of the Mazda and converted the vehicle to their own use. Dodge asked for actual and exemplary damages and attorney's fees. The trial was held before the court without a jury and at the conclusion of the evidence, the trial court filed findings of fact and conclusions of law. The trial court entered judgment for Dodge against Larry and Donna Bosworth in the amount of $8,000 in actual damages for the conversion less the $750.00 owed to them for the storage and towing charges due on the Mazda.[2] The trial court also awarded Dodge $3,000 in exemplary damages. Lastly, the trial court awarded Dodge attorney's fees in the amount of $8,700, an additional $2,500 in the event of an appeal to the court of appeals, and $1,500 in the event of an appeal to the Texas Supreme Court, plus prejudgment and postjudgment interest. Appellants appeal from this judgment.

■ In points of error five, seven, and eight,[3] appellants allege the trial court erred in its conclusions pertaining to TEX.REV.CIV. STAT.ANN. art. 4477–9a (Vernon Supp.1994).

Article V of article 4477–9a is known as the Texas Abandoned Motor Vehicle Act (the Act). The trial court concluded that the Act applied to the case and that appellants, rather than treating the Mazda as an abandoned vehicle subject to the provisions of the Act, improperly tried to foreclose an alleged garageman's lien pursuant to the provisions of the Texas Property Code. Therefore, the court concluded that the sale of the Mazda was invalid and appellants had converted the car. Appellants argued that article 4477–9a did not apply, rather the provisions in the Texas Property Code concerning the sale of vehicles under a garageman's lien were applicable. We disagree.

A trial court's conclusions of law may not be challenged for factual sufficiency; however, a trial court's conclusions drawn from the facts found may be reviewed to determine their correctness. *Vannerson v. Vannerson*, 857 S.W.2d 659, 667 (Tex.App.—Houston [1st Dist.] 1993, writ denied); *Browder v. Eicher*, 841 S.W.2d 500, 502 (Tex.App.—Houston [14th Dist.] 1992, writ denied); *Mercer v. Bludworth*, 715 S.W.2d 693, 697 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).[4]

Given the trial court's findings, and the positions taken by the litigants on appeal, the fundamental issue to resolve is whether the trial court was correct in concluding from the facts that the Texas Abandoned Motor Vehicle Act controls this case and that appellants were not entitled to foreclose under the Texas Property Code.

The Texas legislature has promulgated specific laws and procedures relating to abandoned vehicles and specific laws and procedures relating to vehicles left for repairs or storage by their owners. The laws and procedures governing abandoned vehicles are found in TEX.REV.CIV.STAT.ANN. art. 4477–9a.[5] Under section 5.01(2), an aban-

---

2. The trial court found that Teresa Black did not play any part in the towing, storage, or title application of the Mazda. In its judgment, the trial court ordered that Dodge take nothing from her. She is not a party to this appeal.

3. Appellants grouped their points of error differently than we have in this opinion. Many times appellants have consolidated numerous points of error yet only argued one point in the group. We have attempted to make sense of appellants'

brief and consolidate the points more appropriately.

4. In this appeal, appellants have not challenged any of the trial court's findings of fact, only the conclusions drawn from those facts.

5. The City of Galveston Ordinances also cover abandoned vehicles. In its city ordinances, Galveston has essentially adopted the language contained in article 4477–9a.

doned motor vehicle includes one that has remained illegally on public property for more than forty-eight hours. TEX.REV.CIV. STAT.ANN. art. 4477–9a, § 5.01(2). Section 5.02(a) allows a police department to take an abandoned vehicle into custody; and section 5.02(b) states that the police department may employ its own personnel, equipment, and facilities or hire persons, equipment, and facilities to remove, preserve, and store an abandoned vehicle taken into custody. TEX. REV.CIV.STAT.ANN. art. 4477–9a, § 5.02(a) and (b).

■ Appellants argue there is no evidence to prove that the Galveston Police Department "hired" them to perform the duties under section 5.02(b). Appellants are incorrect. It is undisputed that the Mazda was stolen from Dodge and abandoned on a public street in Galveston. It was ticketed by the Galveston police and classified by an officer as an abandoned vehicle. Donna Bosworth testified that in Galveston, the police do not actually tow the vehicles themselves; rather, there are thirteen wrecker companies in town with emergency permits allowing them to tow vehicles for the police department. The companies rotate so that whichever wrecker service is up next will be called by the police department to do the job. Here, the police called the wrecker service next up on the towing list, i.e. Bosworth Wrecker Service, to remove and store the Mazda. Further, at the time the Mazda was picked up, the wrecker driver for the Bosworths' wrecker company, Butch Herring, had to sign a form provided by the officer at the scene entitled "GALVESTON POLICE DEPARTMENT—Wrecker Pick–Up Acceptance Sheet." The form specifically stated that the reason for the pick-up was that the "vehicle has been abandoned." Further, the notice sent by the appellants themselves to BancTexas stated that if BancTexas did not respond to the notice and reclaim the Mazda, **it would be turned over to the "City of Galveston Police Department under the**

provisions of the Texas Abandoned Motor Vehicle Act."

Thus, the testimony and the exhibits in the record make it clear that the Mazda was taken into custody at the direction of the Galveston Police Department and remained in the custody of the police while it was stored at appellants' facility. The vehicle was simply picked up and stored, pursuant to common practice in Galveston, and pursuant to the provisions of section 5.02(b), by a private wrecker company.

Even though the Mazda was obviously picked up as an abandoned vehicle, appellants claim they were entitled to foreclose pursuant to their alleged garageman's lien. Under the provisions of the Texas Property Code, a garageman with whom a motor vehicle is left for care has a lien on it for the amount of the charges for the care, including reasonable towing charges, of the vehicle. TEX.PROP.CODE ANN. § 70.003(c) (Vernon Supp.1994). A holder of a lien under this section, once he or she has given the proper notice, can foreclose on the vehicle pursuant to TEX.PROP.CODE ANN. § 70.006 (Vernon 1984). Since we have already determined that the Mazda was an abandoned vehicle in the custody of the Galveston Police Department, appellants only possible argument is that they had a choice as to which statute they wished to use. We disagree.

■ Under the facts of this case and a proper construction of article 4477–9a and the relevant provisions of the Texas Property Code, appellants were not entitled to choose and were not entitled to foreclose under the provisions in the Texas Property Code. While certain provisions in both statutes concern the procedures for foreclosing on vehicles no longer in the custody of the true owner, the statutes were clearly promulgated by the Texas Legislature to cover different situations. Article 4477–9a specifically deals with abandoned vehicles as that term is defined in the statute.[6] The article places the

6. Section 5.01(2) specifically defines an "abandoned motor vehicle" as:
... a motor vehicle that is inoperable and more than five years old and left unattended on public property for more than 48 hours, or a motor vehicle that has remained illegally on

public property for a period of more than 48 hours, or a motor vehicle that has remained on private property without the consent of the owner or person in control of the property for more than 48 hours, or a motor vehicle left unattended on the right-of-way of a designated

right to control and dispose of the vehicles with law enforcement authorities. The provisions in the Property Code relied on by appellants deal with situations in which an owner has left a vehicle with a garageman and does not return to pick it up. In that instance, the garageman does have a choice, he can exercise his rights under the Property Code, *see* TEX.PROP.CODE ANN. § 70.003 & 70.006 (Vernon Supp.1994 & Vernon 1984), or call the police and report the car as an abandoned vehicle and let them deal with it. *See* TEX.REV.CIV.STAT.ANN. art. 4477–9a, § 5.01(2) & § 5.05(a)–(f) (Vernon Supp.1994). Here, appellants had no choice because the Mazda was an abandoned vehicle taken into custody by, and under the control of, the Galveston Police Department.

Because the Mazda was an abandoned vehicle rather than a vehicle left by an owner in the care of a garageman, the provisions of the Texas Abandoned Motor Vehicle Act controlled the disposition of the Mazda and appellants' attempt to foreclose under the provisions of the Texas Property Code was unlawful and invalid. The Galveston Police Department was the only entity entitled to auction off or use the Mazda because of its status as an abandoned vehicle. *See* TEX. REV.CIV.STAT.ANN. art. 4477–9a, § 5.04 (Vernon Supp.1994). Therefore, the trial court did not err in its conclusions concerning article 4477–9a. Appellants' fifth, seventh, and eighth points of error are overruled.

In points of error six, nine, and ten, appellants claim the trial court erred in concluding that they converted the car and did so without legal justification or excuse. They also complain that the trial court erred in awarding Dodge $3,000.00 in exemplary damages.

■ Conversion is the wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights. *Bandy v. First State Bank, Overton, Tex.,* 835 S.W.2d 609, 622 (Tex.1992) (citing *Tripp Village Joint Venture v. MBank Lincoln Centre,* 774 S.W.2d 746, 750 (Tex.App.— Dallas 1989, writ denied)). It occurs when one who is unauthorized wrongfully assumes and exercises dominion and control over an-

other's property, to the exclusion of the true owner's rights, even though possession of the property may have originally been acquired by lawful means. *Reese v. Parker,* 742 S.W.2d 793, 797 (Tex.App.—Houston [14th Dist.] 1987, no writ).

■ The appellants are in the business of picking up vehicles and storing them. They hold an emergency permit to pick up abandoned vehicles for the Galveston Police Department. They knew that the Mazda was an abandoned vehicle under the custody and control of the Galveston Police Department and subject to the provisions of the Texas Abandoned Motor Vehicle Act. This was proved when they sent the notice to Banc-Texas on March 31, 1991, on their own form and under their own letterhead, and informed BancTexas that if they did not claim the car it would be turned over to the Galveston Police Department **"under the provisions of the Texas Abandoned Motor Vehicle Act."** This alone is sufficient to preclude any claim by appellants that they were unaware of the provisions of the Act. Yet, it is uncontested that appellants did not comply with the provisions in the Act in that they sold the car at public auction rather than allowing the police to do so as required. They clearly attempted to take ownership of the car through means that they knew were unlawful.

Further, on May 16, 1991, Sergeant Jack Dawson of the Galveston Police Department learned the Mazda was a stolen vehicle. Either that same day or the next, he called Donna Bosworth and reported to her that the Mazda had been stolen from Harris County. On May 17, 1991, Dodge contacted appellants to find out the amount owed for towing and storage. That same day, Dodge sent representative to Galveston to pick up a release from the Galveston Police Department in order to pick up the car. They were given the release by the department, the entity with legal custody of the vehicle pursuant to article 4477–9a, and attempted to pick up the vehicle from appellants by tendering the amount owed for towing and storage.

county, state, or federal highway within this state for more than 48 hours or for more than

12 hours on a turnpike project constructed and maintained by the Texas Turnpike Authority.

Appellants refused to release the vehicle even though they had been told by a Galveston Police Department officer that the Mazda was a stolen vehicle. Even though the Dodge representatives had a release from the legal custodian, i.e., the police department, and Dodge was clearly the rightful owner according to the police, appellants refused to release the Mazda. Again, on May 20, 1991, appellants, knowing that they had improperly foreclosed on the vehicle and that Dodge was the true owner, refused to turn over the Mazda. On May 23, 1991, appellants made a second application for title after their first application had been rejected. This was a week after the rightful owner made a proper demand for the vehicle. Appellants, therefore, knew that the Mazda was stolen and that they were withholding it from the true owner prior to making their second title application and before they actually received title on June 6, 1991.

Thus, even though appellants originally took possession of the Mazda by lawful means, i.e., picking it up and storing it pursuant to a request from the Galveston Police Department, they wrongfully assumed and exercised dominion and control over the Mazda in two ways. First, they sold the Mazda at a public auction when they had no right to do so under the law. The car was in the custody of the Galveston Police Department and only the department had authority to use or sell the vehicle. Appellants were only entitled to their reasonable towing and storage fees after the vehicle was sold by the police. Second, they continued to exercise dominion and control over the vehicle even after they knew Dodge was the true owner and had made a lawful demand for it. *See Morey v. Page*, 802 S.W.2d 779, 787 (Tex. App.—Dallas 1990, no writ). Appellants' contention that they acted in good faith is no defense. *Id.* at 786; *Adam v. Harris*, 564 S.W.2d 152, 155 (Tex.Civ.App.—Houston [14th Dist.] 1978, writ ref'd n.r.e.). Only a qualified refusal to surrender the item may justify a refusal to turn over the property in question and the qualification must be distinctly communicated to the owner. *Morey*, 802 S.W.2d at 786. There is nothing in the record to prove that appellants communicated a proper qualified refusal to Dodge.

Thus, the trial court correctly concluded that appellants had converted the Mazda without legal justification.

Since the trial court correctly concluded that appellants willfully converted the car without legal justification, the trial court did not err in awarding Dodge $3,000.00 in punitive damages. *See* RESTATEMENT (SECOND) OF TORTS, § 222A(1) (1965). Punitive damages are recoverable after proof of a distinct, willful tort. *Nabours v. Longview Sav. & Loan Ass'n*, 700 S.W.2d 901, 904 (Tex.1985). Further, malice or ill will may be implied from the knowing conversion of another's property without proper justification. *Morey*, 802 S.W.2d at 787. When there is malice, exemplary damages are proper. *See id.* The evidence in the record proves that appellants refused to return the car to Dodge after being informed that Dodge was the rightful owner. Appellants reapplied for and obtained a certificate of title even though they were aware that Dodge asserted ownership of the vehicle. Appellants had no right to sell the vehicle or to refuse to return it to Dodge.

Based on the uncontested findings of fact and the other evidence in the record, the trial court did not err in concluding that appellants converted the car without justification, nor did it err in awarding Dodge $3,000.00 in punitive damages. Appellants' sixth, ninth, and tenth points of error are overruled.

In their fourth point of error, appellants contend the trial court erred in sustaining Dodge's objections to the testimony of appellants' expert, Donald H. McClure. Appellants allege that McClure, a former employee of the Texas Department of Highways and Transportation, was prevented from testifying about his knowledge of vehicle foreclosure procedures. Appellants asked McClure his opinion regarding their decision to proceed under Chapter 70 of the Texas Property Code in order to foreclose on the Mazda. Counsel for Dodge objected.

Appellants do not specifically point out in the record the testimony the trial court prevented them from presenting. Further, when the court excludes evidence, the party

offering it shall, as soon as practicable, make an offer of proof in the form of a concise statement in order to preserve the complaint for appellate review. TEX.R.APP.P. 52(b). Appellants made no offer of proof as to the testimony they were prevented from presenting. Thus, this complaint was not preserved for review.

■ Even if appellants had properly preserved their complaint, the evidence they claim was improperly excluded concerned, according to the argument in their brief, the proper interpretation of the foreclosure procedures in the Texas Property Code. Because we have already held that article 4477–9a applied, not the Property Code, any error by the trial court in excluding the evidence was harmless. *See* TEX.R.APP.P. 81(b)(1).

■ In point of error eleven, appellants allege the trial court erred in awarding Dodge attorney's fees in the amount of $8,700.00 through trial, $2,500.00 if an appeal was filed with the appellate court, and $1,500.00 if an appeal was filed with the Texas Supreme Court. This point of error is not properly before this court because it has not even been argued by appellants in their brief. A point of error must be supported by argument and authorities to be properly before the court on appeal. *Hunter v. NCNB Texas Nat'l Bank*, 857 S.W.2d 722, 725 (Tex. App.—Houston [14th Dist.] 1993, writ denied); *King v. Graham Holding Co., Inc.*, 762 S.W.2d 296, 298 (Tex.App.—Houston [14th Dist.] 1988, no writ). If a point of error is not supported by argument and authorities, it is waived. *Trenholm v. Ratcliff*, 646 S.W.2d 927, 934 (Tex.1983); *Bayliss v. Cernock*, 773 S.W.2d 384, 387 (Tex.App.—Houston [14th Dist.] 1989, writ denied). Appellants' eleventh point of error is waived.

■ In their twelfth point of error, appellants allege that the trial court erred in overruling their motion for judgment. They claim Dodge failed to meet at least one element of each of the causes of action alleged. First, appellants provided no citation to that place in the record showing that they moved for directed verdict. Rule 74 of the Texas Rules of Appellate Procedure provides that after each point of error, reference shall be

made to the page of the record where the matter complained of may be found. TEX. R.APP.P. 74(d). Further, after searching the record on our own, we found that appellants' motion only requested the court make a finding that there was no evidence of fraud. Appellee pled that appellants had engaged in a conspiracy to defraud it of the car. The oral motion did not ask for judgment on conversion, nor did it ask for judgment on the entire case. The trial court never made a finding that appellants had engaged in a conspiracy to defraud appellee, in fact, the trial court dismissed Teresa Black from the suit and failed to conclude that there was an conspiracy to defraud appellee of the car. The trial court only concluded that appellants had committed conversion. Fraud, conspiracy, and conversion are separate torts. Appellants are not entitled to relief that they did not request. *See* TEX.R.APP.P. 52(a).

Appellants' twelfth point of error is deficient for another reason. Their argument under this point of error is not an argument, rather it is merely a conclusory statement unsupported by citation to the record or authorities. Under this point of error appellants stated:

As demonstrated above, Appellee failed to meet at least one element of each of the causes of action which Appellee alleged in its last Amended Petition. Therefore, the trial court errored [sic] in overruling Appellants['] Motion for Directed Judgment. The trial court's mistake constituted reversible error and lead to the rendition of an incorrect Judgment.

This paragraph constitutes the entirety of appellants' argument under their twelfth point of error. This type of "argument," if it can be called that, presents nothing for review. A point of error must be supported by argument and authorities to be properly before the court on appeal. *Hunter v. NCNB Texas Nat'l Bank*, 857 S.W.2d 722, 725 (Tex. App.—Houston [14th Dist.] 1993, writ denied); *King v. Graham Holding Co., Inc.*, 762 S.W.2d 296, 298 (Tex.App.—Houston [14th Dist.] 1988, no writ). If a point of error is not supported by argument and authorities, it is waived. *Trenholm v. Ratcliff*, 646 S.W.2d 927, 934 (Tex.1983); *Bayliss v.*

*Cernock,* 773 S.W.2d 384, 387 (Tex.App.— Houston [14th Dist.] 1989, writ denied). For the numerous reasons discussed, appellants' twelfth point of error is overruled.

In light of our disposition of appellants' previous points of error, it is unnecessary to address their remaining points. Accordingly, the judgment of the trial court is affirmed.